**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **ROBERT STARBUCK NEWSOM,** | ) | |
| **aka ROBBY STARBUCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **SCOTT GOLDEN, in his official capacity** | ) | |
| **as Chairman of the Tennessee Republican** | ) | |
| **Party; the TENNESSEE REPUBLICAN** | ) | |
| **PARTY; MARK GOINS, in his official** | ) | |
| **capacity as Coordinator of Elections—Office** | ) | |
| **of the Tennessee Secretary of State; and** | ) | |
| **TRE HARGETT, in his official capacity as** | ) | |
| **Tennessee Secretary of State** | ) | |
| | ) | |
| **Defendants.** | ) | |

**VERIFIED COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**

**I. INTRODUCTION**

1.      The caricature of a cabal of power-wielding party bosses meeting secretly in smoke-filled rooms to rig elections was thought to be a thing of the past—but this practice remains alive and well in Tennessee. Until April 21, 2022, Robby Starbuck was a federal candidate who properly filed his papers seeking the Republican nomination to represent the 5th District of Tennessee in the United States Congress. A lifelong Republican when he moved to Tennessee in December 2018, Starbuck engaged in zealous efforts to advance the Republican party's causes, support its efforts, and grow the party, both in Tennessee and nationally. He has become a popular figure among the Tennessee Republican Party's grassroots members, with the support and appreciation of innumerable local party officials, as well as the endorsement of high-profile national party leaders and officeholders, due to his visible Republican Party activism.

2.     In a secret vote taken during a non-public meeting on April 19, 2022—in violation of Tennessee's open government laws applicable to such meetings—a majority of a sixteen-member subcommittee of the sixty-five members of the Tennessee Republican Party's (TRP) State Executive Committee (SEC) reportedly voted to instruct the State of Tennessee to terminate Mr. Starbuck's federal candidacy by removing him from the upcoming primary ballot. Two days later, the TRP directed Mark Goins, the Tennessee Coordinator of Elections in the Office of the Secretary of State, to remove Mr. Starbuck from the Republican primary ballot. The TRP incredibly claims that in so doing, it was simply exercising its strictly limited authority under Tennessee law to direct the state to stop non-Republican candidates from seeking Republican nominations. The TRP also eliminated Morgan Ortagus, a Trump Administration official endorsed by President Trump, from the primary ballot for the 5th Congressional District.

3.     TRP Chair Scott Golden and members of the SEC have offered a series of conflicting explanations for the basis of the decision—all of which are inconsistent with federal and state law as well as the TRP's own Bylaws, and have nothing to do with Mr. Starbuck's status as a bona fide Republican. That was the *only* question the TRP was empowered by Tennessee law to answer–and the only basis upon which Tennessee lawfully *could* terminate Mr. Starbuck's candidacy. And yet the state unquestioningly carried out the TRP's unlawful order to remove a qualified candidate from the ballot.

4.     For over 160 years, governmental power in the United States has mainly shifted between two parties: The Republican Party and the Democratic Party. Indeed, for at least the last 60 years, only *two* members of Congress were initially elected who were neither a Republican nor a Democrat—Senators Bernie Sanders of Vermont, and Angus King of Maine. Both caucused exclusively with the Democratic Party, and Senator Sanders has now twice sought the Democratic

Party's Presidential nomination. In most states, the only realistic path to elected government service in the United States Congress is through one of the two main parties. With all of the elected federal candidates in Tennessee from the two major parties, it cannot be the case that the two parties have a right to bar initial access to the ballot without any guardrails.

5. Federal law recognizes the outsized role that political parties play in government and regulates their roles—including aspects of their internal affairs—insofar as they directly intersect with government functions, including federal elections. Where a party, such as the TRP, is effectively acting as a gatekeeper to federal office, and its nominee is chosen through a federal election administered by a state government, these acts implicate strong public interests. Candidates have a corresponding protected liberty interest in having access to the ballot.

6. The TRP is empowered by Tennessee law to limit participation in primary elections for its nominations to members of the Republican Party. The TRP and the state's powers to control participation in elections, and thereby control election outcomes, are neither unlimited nor immune from basic legal norms of consistency and due process. The state's delegation of authority to the TRP to control access to the federal primary election ballot, and thus, federal elective office manifestly does *not* include the authority to covertly manipulate the outcome of federal primary elections by ordering the state to exclude bona fide Republican candidates—such as Mr. Starbuck—from the ballot. Yet that is exactly what the TRP and the state did to Mr. Starbuck and other duly qualified Republicans, and it did it through a secret vote in a non-public meeting in violation of Tennessee open government law.

7. The abrupt removal of Mr. Starbuck and Ms. Ortagus from the 5th District Republican race clears the way for Beth Harwell, former Chair of the TRP and former speaker of the Tennessee House of Representatives. One of the informal explanations for the TRP's decision

by members of the SEC pressed for answers by incredulous Republican voters—there has been no official statement by the TRP of a reasoned basis for its decision—is that the decision was compelled by state law. Specifically, a law advanced by Sen. Frank S. Niceley, who has made no secret of his desire to use this new law to help the candidacy of Ms. Harwell, his friend, and block Mr. Starbuck and Ms. Ortagus from the election because he considers them "carpetbaggers." But the law in question is not even in effect for this election cycle, begging the question of what, exactly, motivated the TRP's decision, which is either arbitrary at best, or deliberately rigged to benefit a party insider, at worst.

8.      Mr. Starbuck has devoted the last ten months of his life, full time, to campaigning for the 5th Congressional District seat, and his campaign has raised and spent over $100,000 in reliance on the TRP's rules in its Bylaws, which permit Republicans to run for office if they are active in the Republican Party and can support their bona fide Republican status with vouching letters from certain TRP officials. Despite Mr. Starbuck's clearly meeting the qualification threshold by submitting several vouching letters and extensive evidence of his Republican bona fides, the TRP ignored its own rules and directed the state to end his candidacy.

9.      The Defendants broke the law in several ways when they removed Mr. Starbuck's name from the 2022 primary election ballot. First, they violated the Qualifications Clause of the United States Constitution by adding substantive qualifications for federal office that are not in the Constitution. Second, have violated Mr. Starbuck's procedural due process rights by terminating his access to the ballot through a deeply flawed "process" lacking almost any semblance of due process, including a failure to accurately notify him of the basis of the challenge against him so that he could properly respond, holding meetings in secret, and then proffering conflicting and often baseless justifications for the decision. Third, they violated his First Amendment right to

ballot access by removing his name from the ballot for reasons that are outside the limited scope of their authority. Fourth, the TRP violated the Tennessee Open Meeting Act ("TOMA") by terminating Mr. Starbuck's candidacy through a secret vote at a non-public meeting. Finally, they breached a contract with Mr. Starbuck by, and were estopped from, directing Defendant Goins to remove his name from the election ballot, because doing so violated the plain terms of the TRP Bylaws on which he relied to his detriment. Mr. Starbuck seeks declaratory and injunctive relief to remedy these violations, and he seeks damages on his contract and estoppel claims.

## II. PARTIES

10. Plaintiff Robert Starbuck Newsom aka Robby Starbuck ("Mr. Starbuck") is and has been a resident of Williamson County, Tennessee since December 2018. Mr. Starbuck is presently running to represent Tennessee's 5th District in Congress, covering Davidson County, Williamson County, Wilson County, Maury County, Marshall County, and Lewis County. Mr. Starbuck's campaign website and message to his constituents may be accessed here: Official Campaign Website - Robby Starbuck (starbuck2022.com). Defendant Mark Goins recently removed Mr. Starbuck from the August 2022 primary election ballot at the direction of Defendant Scott Golden, acting on behalf of the Tennessee Republican Party ("TRP") under the false pretext that Mr. Starbuck was not a "bona fide" Republican candidate.

11. Defendant Scott Golden ("Mr. Golden"), in his official capacity as the Chairman of the Tennessee Republican Party ("TRP"), is and has been a resident of Tennessee and is the Chairman of the Tennessee Republican Party. Under Tennessee law, the State Executive Committee (SEC) of the TRP has certain powers and duties regarding the conduct of elections, including the power to direct the state Coordinator of Elections (Defendant Mark Goins) to terminate the candidacy of a federal candidate in the TRP's primary elections—but only if the

candidate is *not* a Republican. On April 21, 2022, Mr. Golden instructed Defendant Mark Goins to remove Mr. Starbuck's name from the ballot in the upcoming primary election in Tennessee's 5th Congressional District. The TRP's headquarters are located at: 95 White Bridge Road, Suite 414, Nashville, TN, 37205. The TRP's website may be accessed here: Home - Tennessee Republican Party (tngop.org).

12. The Tennessee Republican Party ("TRP") is a political party recognized under Tennessee law, i.e., an organization that nominates candidates for political offices within Tennessee. The TRP's headquarters are located at: 95 White Bridge Road, Suite 414, Nashville, TN, 37205. The TRP's website may be accessed here: Home - Tennessee Republican Party (tngop.org).

13. Defendant Mark Goins ("Mr. Goins"), in his official capacity as the Coordinator of Elections—Office of the Tennessee Secretary of State, is and has been a resident of Tennessee and is the Coordinator of Elections for the Office of the Tennessee Secretary of State. As the Coordinator of Elections for the Office of the Tennessee Secretary of State, Mr. Goins is tasked with overseeing the election process throughout Tennessee. Upon information and belief, Mr. Goins removed or is about to remove Robby Starbuck's name from the ballot for the 2022 federal Republican primary election for Tennessee's 5th Congressional District, after receiving Defendant Golden's April 21, 2022 directive to do so.

14. Defendant Tre Hargett ("Mr. Hargett"), in his official capacity as the Tennessee Secretary of State, is and has been a resident of Tennessee and is the Secretary of State. As the Secretary of State, Ms. Hargett has the ultimate oversight and responsibility over the election process throughout Tennessee. Upon information and belief, Mr. Hargett removed or authorized the removal of Robby Starbuck's name from the ballot for the 2022 federal Republican primary

election for Tennessee's 5th Congressional District, after receiving Defendant Golden's April 21, 2022 directive to do so.

### III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1331 and 42 U.S.C. § 1983, as Defendants' actions have violated Mr. Starbuck's rights under the 1st and 14th Amendments to the United States Constitution. This Court further has supplemental jurisdiction over Mr. Starbuck's state-law claims under 28 U.S.C. § 1367.

16. Venue is proper under 28 U.S.C. § 1391(b) as the events giving rise to Mr. Starbuck's claims occurred in the Middle District of Tennessee, Mr. Starbuck and Defendants reside in Tennessee, and documents and witnesses pertinent to this matter are located in Tennessee.

### IV. FACTUAL BACKGROUND

17. Mr. Starbuck has dedicated his life to the Republican party and its ideals, and is a popular and outspoken proponent of Republican policies on social media. Leveraging his background in the entertainment industry as a director, Mr. Starbuck has amassed a significant following on social media. Through social and other media, he has constantly advocated for conservative ideals such as reducing bureaucracy to promote businesses, traditional family values, religious freedom, support for law enforcement, judicial independence, limited government, fiscal responsibility, parental rights, and unfettered freedom of speech. In his profession, Mr. Starbuck often found himself to be in the political minority as a Republican, and consequently suffered significant loss of business after publicizing his support for Republican causes on social media.

18. Mr. Starbuck has been a steadfast rank-and-file Republican all of his life, including when he was a California resident before he moved to Tennessee. While in California, he was only

ever registered with the Republican Party. He has regularly voted in California in both primary and general elections.

19.     Mr. Starbuck's zealous support of the Republican Party while in California is not just limited to his voting record. In 2008, he directed an advertisement for Ron Paul's political campaign. He traveled within the state to attend meetings of Republican groups, sometimes as an honored guest speaker. He publicly endorsed President Trump, which led to him being shunned and ostracized by others in the entertainment industry.

20.     The backlash that Mr. Starbuck faced, including partially effective attempts to "cancel" and blackball him from the entertainment industry, only catalyzed his ardent activism.

21.     After Mr. Starbuck moved to Tennessee, he contributed his considerable expertise in the entertainment industry to attract young voters and minorities to the Republican Party, combat the Democratic Party's messaging against and demonization of conservatives, and generally increase Republican voter turnout. As but a few examples:

- Along with his wife, Mr. Starbuck began a podcast/video series called "Grow Up" in which they discussed conservative topics and interviewed Republican Party members and activists;

- Mr. Starbuck wrote a list of President Trump's accomplishments during his presidency, which was so widely downloaded, viewed, and shared on social media that the New York Times wrote two separate stories on its popularity and tried to discredit it;

- In the spring of 2020, Robby Starbuck created the film "I am Republican," which highlighted the diversity of Republicans and supporters of President Trump in age, ethnicity, religions, geographic locations, education, professions, and motivations.

This film was widely viewed, shared, and utilized by both Tennessee and national Republicans right before the 2020 elections, with Donald Trump Jr. calling it the best representation of President Trump's supporters;

- Mr. Starbuck was one of the main speakers at the annual Conservative Political Action Conference ("CPAC") for the past two years;

- Mr. Starbuck consistently appears on conservative media talk shows, where his appearances are widely viewed and shared on social media, with President Trump and Donald Trump Jr. reposting some of the video clips;

- Mr. Starbuck was a board member of the Amistad Project, under the auspices of the Thomas Moore Society, which promoted election integrity and traced hundreds of millions of dollars of "dark money" to Mark Zuckerberg;

- Mr. Starbuck organized the March to the Border 2022 to bring attention to the extent of illegal immigration and human trafficking at the U.S.-Mexican border;

- He was the main speaker at a protest at the Williamson County school board against the forced masking of children and also attended Nashville school board meetings for the same cause;

- Mr. Starbuck organized a fundraiser (over $140,000) on behalf of a teenage girl in Wyoming who was suspended from her school for refusing to comply with a mask mandate;

- He organized a rally in Franklin, Tennessee to honor first responders in memory of the 9/11 terrorist attacks, during the height of the anti-police protests and riots across the U.S.;

- Mr. Starbuck's get-out-the-vote events in Franklin, Tennessee, were so successful that the Williamson County Republican Party Chairwoman, Cheryl Brown, asked Mr. Starbuck to assist organizing a rally to support the 2020 Republican general election candidates, including now-Senator Bill Hagerty, Williamson County Mayor Rogers Anderson, and others;

- Mr. Starbuck advocated for Tennessee legislators such as Senator Jack Johnson to pass election integrity and medical freedom bills;

- Mr. Starbuck spoke at a committee in the Tennessee House of Representatives to support the passage of HB1944 to prohibit pornography in schools;

- Mr. Starbuck spoke in front of the Tennessee Supreme Court building in support of school vouchers passed by the Republican legislature; and

- Mr. Starbuck acted as the spokesman for Latinos for Tennessee, a group of conservative Latinos who recognize how important of a swing vote Latinos are, and how many Latinos share Republican Party values.

22. On June 22, 2021, Mr. Starbuck officially declared his candidacy to be the U.S. Representative for Tennessee's 5th Congressional district. As a member of the TRP and in reliance on its Bylaws, Mr. Starbuck filed his nominating petition on March 22, 2022, with at least the twenty-five prerequisite Republican signatures, with the State Election Commission, and a certified duplicate with the Coordinator of Elections.

23. Mr. Starbuck's activities as a Republican and in support of the Republican party and its causes earned strong support among Republican leaders nationwide, and grassroots popularity in Tennessee Republican circles. Mr. Starbuck has received a host of endorsements from stalwarts of the national and local Republican Party including a Republican U.S. Senator,

five Republican U.S. Representatives, Williamson County Sheriff Dusty Rhoades and Republican media personality Candace Owens.

24.     On February 2, 2022, in a desperate attempt to block several Republican candidates for the 5th congressional district, Tennessee State Senator Frank Niceley introduced a bill—SB 2616—which initially required all Congressional candidates to have voted in the last three statewide primary elections, but which was then amended to requiring a three-year residency in Tennessee.[1] Senator Niceley was motivated by what he described as an invasion of "carpetbaggers" or "Gucci baggers."[2] Senator Niceley acknowledged on a radio show that he was motivated to introduce SB 2616 to assist his friend, Beth Harwell, with her campaign for the TRP's nomiation in the 5th Congressional District Primary and that Starbuck and Ortagus were examples of the "carpetbaggers" his bill targeted.

25.     The bill passed the legislature on March 23, 2022.

26.     On March 31, 2022, three Tennessee residents in the 5th Congressional District immediately filed a lawsuit on behalf of Ms. Ortagus. The plaintiffs sought a declaratory judgment that SB 2616 was unconstitutional because it violated the Qualification Clause of the United States Constitution. The plaintiffs also noted that legislators made public statements admitting that they questioned or knew the lack of constitutionality of the bill before they passed it. First Amended Complaint, *Collins et al. v. State of Tennessee et al.*, Case No. 3:22-cv-225, M.D. Tenn. April 15, 2022) (ECF 16).

---

[1] *See* URL: https://wapp.capitol.tn.gov/apps/BillInfo/Default.aspx?BillNumber=SB2616.
[2] Sam Stockard, *Bill to lock out congressional newcomers faces amendment in House*, TENNESSEE LOOKOUT (MARCH 1, 2022, 2:53 PM) https://tennesseelookout.com/2022/03/01/bill-to-lock-out-congressional-newcomers-faces-amendment-in-house/.

27.     When State Sentator Niceley was interviewed by NBC News about why he was trying to dispose of Ortagus, a candidate explictly supported by President Trump, he made discriminatory remarks that President Trump did not truly support her, but only his Jewish family members (i.e., Jared Kushner and Ivanka Trump) supported her solely because Ms. Ortagus was Jewish.[3]

28.     SB 2616 became law on April 13, 2022, after the April 7, 2022 filing deadline for congressional candidates to be on the 2022 ballot. The Tennessee Secretary of State's Office confirmed that SB 2616 was inapplicable to candidates who had already filed to appear on the ballot in the 2022 elections.[4] Senator Niceley's efforts to exclude his disfavored candidates, including Mr. Starbuck, was temporarily thwarted. But this was not the only aspect of the discriminatory and exclusionary scheme to cancel Mr. Starbuck's campaign.

29.     In February, Mr. Starbuck heard rumors that complaints had been filed with the TRP challenging whether he was a bona fide Republican based solely on the number of recent Republican primaries in which he had voted. According ot the TRP's Bylaws, Art. IX, § 1 (attached

---

[3] Allan Smith, *Trump-backed House candidate removed from ballot by Tenn. Republicans*, NBC NEWS (APRIL 19, 2022) https://www.nbcnews.com/politics/2022-election/trump-backed-house-candidate-removed-ballot-tenn-republicans-rcna25039 ("I don't think Trump cares one way or the other," he said. "I think Jared Kushner — he's Jewish, she's Jewish — I think Jared will be upset. Ivanka will be upset. I don't think Trump cares"). These are not the only questionable remarks that Senator Niceley has made. He also spoke highly of Adolf Hitler as a man who went from "liv[ing] on the streets" to "lead[ing] a life that's got him into history books" in the context of commenting on how the homeless could pull themselves up by their bootstraps. Christopher Brito, *Tennessee state senator Frank Niceley cites Adolf Hitler as example of how homeless people can turn lives around*, CBS NEWS (APRIL 15, 2022) https://www.cbsnews.com/news/frank-niceley-adolf-hitler-homeless-tennessee/.

[4] Jon Styf, *Secretary of State: Tennessee residency law won't apply to candidates in this year's primaries*, THE CONNECTION (April 14, 2022) https://www.robertsoncountyconnection.com/news/state/secretary-of-state-tennessee-residency-law-wont-apply-to-candidates-in-this-years-primaries/article_9010bbd9-02b2-5db9-9075-3397a420b220.html.

as **Exhibit A**) a person is a "bona fide Republican" and therefore may run in the TRP's primray if that person "either" voted in "at least three (3) of the four (4) most recent Statewide Republican primary elections" "or" is "vouched for in writing . . . as a bona fide Republican" by a qualified Party official.

30.     Based on the TRP's early statements about its standards and process, it was apparently making them up as it went along. The TRP would say little about these complaints or what process it would allow for Mr. Starbuck to answer them.The TRP reportedly stated that it would consider a candidate's out of state primary voting history, whch the Bylaws arguably permit, but the TRP did not follow through on that representation.[5] During a call with Mr. Starbuck in March, the TRP first indicated its meeting  to decide the merits of the complaint against him (which would eventually take place on  April 19, 2022) would be public. However, just days before the April 19 meeting, the TRP informed Mr. Starbuck he could participate by Zoom—but it would not be a public meeting. Within 24 hours of that meeting, the TRP informed Mr. Starbuck his representatives could not join him. And on the day of the meeting the TRP told him he could not participate, either.

31.     Concerned the TRP might act without giving him notice and an opportunity to respond, Mr. Starbuck submitted a letter to the TRP on March 18, 2022, explaining his Republican bona fides and enclosing five vouching letters and a package of supporting evidence. *See* **Exhibit B**; *see also* Bylaws, Art. IX, § 1 (**Exhibit A**) (providing that vouching letters may establish that a person is a bona fide Republican).

---

[5]  Mathew Boyle, *Party Bylaws Did Not Disqualify Trump-Backed Pick for Nashville District, Despite Tennessee GOP Chairman's Claims*, Breitbart (April 27, 2022), https://www.breitbart.com/politics/2022/04/27/party-bylaws-did-not-disqualify-trump-backed-pick-nashville-district-despite-tennessee-gop-chairmans-claims/.

32. In an April 5, 2022 emial, SEC member Chuck Grimes berated Mr. Starbuck for not providing the TRP with his voting record, refusing to acknowledge that the TRP's Bylaws provided that vouching letters were an equal alternative to primary election voting history. *See* **Exhibit C**.

33. On April 6, 2022, Mr. Starbuck emailed the TRP, in response to Mr. Grimes, and provided his California voting record. *See* **Exhibit D**. Mr. Starbuck provided this record to Defendant Golden in 2021 and, after the complaint against him had been filed, Defendant Golden's assistant represented he would circulate it to the SEC committee considering his status.

34. Between April 6 and April 18, Mr. Starbuck spoke to SEC members and provided more information to them, including additional vouching letters. *See* **Exhibit E** (Matthews vouching email); **Exhibit F** (Smith vouching letter); **Exhibit G** (voter emails); and **Exhibit H** (Young Republican Chair vouching letter).

35. Nevertheless, a subset of the TRP's SEC held a non-public meeting on April 11, 2022, and voted to "recommend the suspension" of Mr. Starbuck's candidacy. Mr. Starbuck was formally notified of his "recommended suspension" for not being a real Republican after the fact in an April 11, 2022 letter from Mr. Golden. The letter stated that: (1) his candidacy had been "properly protested"[6] and challenged on the basis that he was not a "bona fide" Republican; (2) the SEC of the TRP had determined that his "candidacy did not currently meet the bonafide [sic]

---

[6] Article IX, Section 2 of the Bylaws of the Tennessee's Republican Party reads: If a person's bona fide status is challenged, the challenge shall be made to the State Chairman from at least two individual registered voters (within the district in which the challenged candidate has filed to run) who have voted in at least three of the last four most recent Statewide Republican primary elections. Such a challenge must be made no later than five days before the deadline for removal of a candidate's name from a ballot under TCA Section 2-5-204 or otherwise, or any other applicable deadline. *See Bylaws and Rules of the Tennessee Republican Party*, TENNESSEE REPUBLICAN PARTY (last amended April 27, 2019) URL at: https://www.tngop.org/tngop-bylaws- (attached as **Exhibit A**).

standard of the Tennessee Republican Party"; and (3) the SEC had "recommended the suspension of [his] candidacy." *See* **Exhibit I** (April 11, 2022 Bona Fide Challenge Notice Letter). The letter referenced language from Article IX of the Tennessee Republican Party's Bylaws ("Bylaws").

36. In pertinent part, the referenced language in the Party's Bylaws reads: "The TRP hereby defines the term 'bona fide Republican' as: . . . *either*  . . [an] individual who has voted in at least three of the four most recent Statewide Republican primary election; *or* [an] individual who is vouched for in writing . . . by **an** officer of the TRP or a member of the CEC [Party County Executive Committee]. . . of the County and/or District where said individual resides." *See* Bylaws, Art. IX, § 1 (**Exhibit A**) (emphases added).

37. The letter also stated that Mr. Starbuck had seven days to "verify [his] voting record or submit a 'vouch for' as described in Article IX of the Tennessee Republican Party Bylaws," and that unless he provided "sufficient information" to "golden@tngop.org" by April 21, 2022, he would then be "removed from the primary ballot."

38. By April 19, Mr. Starbuck has submitted evidence of hundreds of Tennessee voters, county GOP leaders, and national GOP politicians who vouched for his Republican bona fides. *See* **Exhibits B, D-H.** Included among these were written vouchers from the following nine Party County Executive Committee ("CEC") members from the 5th congressional district and Williamson County:

a. Mr. Sean A. Raesemann, First Vice Chairman of the Williamson County Republican Party;

b. Mr. Jim Garrett, Chairman of the Davidson County Republican Party;

c. Ms. Julie Quan, Chairwoman of the Marshall County Republican Party ("Chairwoman Quan");

d.      Ms. Wendi Strauch, Davidson County Executive Committee Communications Secretary;

e.      Ms. Shannon McGuffin, Davidson County Republican Party Treasurer; and

f.      Mr. Cody Mitchell, Chairman of the Lewis County Republican Party.

g.      Ms. Debbie Matthews, Chairwoman of the Maury County Republican Party;

h.      Mr. Bart Smith, Second Vice Chairman of the Davidson County Republican Party; and

i.      Mr. Nathan Green, Chairman of the Nashville Young Republicans.

39.     On April 19, 2022, the Tennessee Republican Party's 16-member subcommittee of the SEC held another closed, secret meeting, where reportedly thirteen members of sixteen present voted to remove Mr. Starbuck from the primary ballot. There was no public notice of the meeting, no opportunity for the public to attend, no opportunity for Mr. Starbuck to be present or observe the discussion of his candidacy, much less answer questions or provide information in response to the matters discussed, and to date there is no evidence of an official record of the subcommittee's deliberations or an explanation of its reasoning.

40.     On a call on April 19, 2022, after the vote, Defendant Golden told Mr. Starbuck that no candidate had ever provided so many vouching letters and still been removed from the ballot. Indeed, he would discover that some Republicans had been permitted to compete in primary elections with neither a qualifying voting record, *nor* vouching letters.

41.     On April 20, 2022, Mr. Golden publicly stated that the removal and determination that Mr. Starbuck was not a "bona fide" Republican was premised entirely on Mr. Starbuck's voting record, i.e., that he had failed to meet the party's requirements of having voted in three of the last four statewide primaries. Golden conspicuously was silent on the fact that Mr. Starbuck

16

clearly had met the party's alternative, and equivalent, vouching requirement several times over. Mr. Golden did not reveal which of the subset of SEC members had voted to disqualify Mr. Starbuck, any other bases for disqualification, and whether anyone besides the members had been in attendence or otherwise attempted to influence the proceeding, incuding other candidates, their representatives, state legislators, or other interested parties.

42. Mr. Golden's explanation of the Party's decision is inconsistent with the Party's Bylaws and state law. State law only permits the Party to block candidates who are not bona fide Republicans. Tenn. Code Ann. § 2-13-104.  The TRP's Bylaws clearly state that the "Party membership requirements for candidacy to public office" are three-fold, with the third factor containing a disjunctive condition:

    a.    First, the individual must be "actively involved in the Tennessee Republican Party, his County Republican Party, or any recognized auxiliary organization of either";

    b.    Second, he must "reside[] and [be] registered to vote in said county"; and

    c.    Third, he must have "***either*** . . .

        i.    voted in at least three of the four most recent Statewide Republican primary elections; ***or***"

        ii.    be "vouched for in writing (to the satisfaction of the decision makers defined herein) as bona fide Republican by an officer of the TRP or a member of the CEC, excluding SEC members, of the County and/or District where said individual resides." Bylaws, Art. IX, § 1 (**Exhibit A**).

43. Put differently, in order to disqualify a candidate from the primary ballot on the basis that he or she is not an "bona fide" Republican, the state Republican party, under its own bylaws, must establish that: (1) an individual has not voted in at least three of the four most recent

Statewide Republican primary elections; **and** (2) that the individual has not been vouched for in writing by an officer of the TRP or a member of the CEC of the County and/or District where said individual resides.

44.     Mr. Golden and the SEC failed to meet  these conditions because nine local TRP leaders and CEC members from Tennessee's 5th congressional district and Williamson County have vouched in writing that Mr. Starbuck was a bona fide Republican, specifically:

a.      Mr. Sean A. Raesemann, First Vice Chairman of the Williamson County Republican Party and CEC member;

b.      Mr. Jim Garrett, Chairman of the Davidson County Republican Party and CEC member;

c.      Ms. Julie Quan, Chairwoman of the Marshall County Republican Party and CEC member;

d.      Ms. Wendi Strauch, Davidson County Executive Committee Communications Secretary and CEC member;

e.      Ms. Shannon McGuffin, Davidson County Republican Party Treasurer and CEC member;

f.      Mr. Cody Mitchell, Chairman of the Lewis County Republican Party and CEC member;

g.      Ms. Debbie Matthews, Chairwoman of the Maury County Republican Party;

h.      Mr. Bart Smith, Second Vice Chairman of the Davidson County Republican Party; and

i.      Mr. Nathan Green, Chairman of the Nashville Young Republicans.

45.     Accordingly, a decision to remove Mr. Starbuck from the primary ballot solely on the basis of Mr. Starbuck's failure to vote in three of the last four Statewide primary elections, as Mr. Golden stated, was not a determination as to whether he was a bona fide Republican – the only grounds upon which Tennessee law and the Party's Bylaws permitted the Party, acting through the state, to terminate his candidacy.

46.     But there is also evidence that Mr. Golden did not accurately state the basis of the subcommittee's secret vote. On information and belief, subcommittee member Angie McClanahan has stated that her vote to end Mr. Starbuck's candidacy was specficially *not* based on his voting record. Instead, she has informed others that her vote was based solely on a state law, referring to Tennessee's new—and inapplicable—residency law, to disqualify Mr. Starbuck. *See, e.g.*, **Exhibit J** (text message from Angie McClanahan stating "I didn't go on the basis of voting record in his and Ortegas' cases. I voted based on state law."). How Ms. McClanahan, tasked by the party to determine whether a Tennessee citizen would be permitted to exercise a fundamental civil right, was so grossly misinformed, and by whom, remains a mystery, because the party kept the proceedings secret.

47.     Even more difficult to reconcile is the fact that in in previous challenges to Republican candidates's bona fide status, the SEC had allowed candidates who had failed to vote in three of the previous four statewide primaries to continue to the ballot. One such example is Mr. Bennie Smith Jr., who is running as the incumbent for the Wilson County Commissioner position in the August 4, 2022 primaries, despite, upon information and belief, having failed to vote in three of the previous four statewide primaries.  Another such example is Mr. Brown Dudley, who is running in Tennessee's 9th Congressional District, the same type of office Mr. Starbuck is seeking, and Mr. Dudley had fewer vouching letters than Mr. Starbuck. Even more egregiously, there are

at least two candidates—Jeff Beierlein and Stewart Parks—for the 5th Congressional district who, upon information and belief, also did not vote in three of the previous four statewide primaries and yet were allowed to remain on the ballot.

48.     The Party SEC subcommittee's second secret vote regarding Mr. Starbuck took place on April 19, 2022. Upon information and belief, 13 members of the SEC voted to have Mr. Starbuck's name removed from the ballot. By letter dated April 21, 2022, Defendant Golden directed Defendant Goins to remove Mr. Starbuck's name from the ballot, along with fellow 5th District candidate Morgan Ortagus and other candidates. *See* **Exhibit K**.

49.     Had the SEC's subcommittee in fact answered the *only* question it was empowered to determine, it would have concluded that Mr. Starbuck was a bona fide Republican qualified to participate in the Party's primary.

50.     First, Mr. Starbuck is "actively involved" with the state and/or county Republican Party. "Actively involved" is defined as "a quantifiable contribution including, but not limited to, time or money to the TRP, his County Republican Party, or any recognized auxilary organization of either during the time period since the most recent County Republican Party reorganization." Bylaws, Art. IX, § 1, ¶ C.2 (**Exhibit A**). Mr. Starbuck has not only given his "money and time," but also his voice and talent in the following ways:

a.      As to money:

    i.      Mr. Starbuck is a Chairman's Circle financial donor to the Williamson County Republican Party;

    ii.     Mr. Starbuck is a financial donor to the TRP; and

    iii.    Mr. Starbuck is a financial donor to the Davidson County Republican Party.

b.      As to time:

i.       At the request of Williamson County GOP Chair Cheryl Brown, Mr. Starbuck co-organized a rally with the Williamson County GOP to support Republican Party's 2020 general election candidates, including Senator Bill Hagerty;

ii.     Mr. Starbuck was integral to organizing the Franklin, Tennessee "Rally 4 Freedom" on September 11, 2020, with other Republican speakers including Gary Humble, CJ Pearson and leaders of local veterans organizations;

iii.    Mr. Starbuck was one of the lead organizers of Brandon Straka's #WalkAway rally in Nashville on October 10, 2020;

iv.    Mr. Starbuck frequents Republican meetings, gatherings, and events such as the late Tim Skow's First Tuesdays, the Williamson County Republican Party's Dinner with former Secretary of State Michael Pompeo on August 7, 2021, and the TRP's 2021 Statesman's Dinner—among many others.

c.    As to voice and talent:

i.       Mr. Starbuck co-founded a video podcast series entitled "Grow Up" which, according to Chairwoman Quan, helped grow the party base in Tennessee's 5th Congressional district; on his podcast, before ever running for office, he hosted Republicans thought leaders and elected officials like Mr. Dennis Prager, Mr. Dinesh D'Souza, Congressman Chip Roy, Senator Rand Paul, Director of National Intelligence Richard Grenell and many others.

ii.     In late spring of 2020, Mr. Starbuck created a film called "I am Republican," a film highlighting the diversity in age, ethnicity, religions,

geographic locations, education, and professions of Republicans and their reasons for being Republican, which, according to Chairwoman Quan, was an "uplifting, encouraging, positive film that helped broaden the perception of who Republican Voters and Supporters are, thereby growing the Republican Party."

iii.     Mr. Starbuck spoke at many local Republican Party meetings.

iv.     Mr. Starbuck appeared on national television programs such as Tucker Carlson  Tonight, Primetime on FOX News, Candace, Varney & Co., Real News with Lara Trump and many others.

51.     Second, Mr. Starbuck is a resident and registered voter of Williamson County.

52.     Accordingly, Mr. Starbuck is a "bona fide" Republican under the TRP's Bylaws, and the SEC improperly removed him from the ballot.

53.     Tennessee Elections Code section 2-5-204(b)(1)(B) reads: "If an executive committee submits a candidate's name to be excluded from the ballot pursuant to subdivision (b)(2)(A), the executive committee shall provide the candidate written notice of the exclusion within two (2) days after submission." After receiving the notice, the disqualified candidate then has two days to appeal the decision with the coordinator of election and the SEC.

54.     Mr. Starbuck did not receive such a notice from the SEC following its April 21, 2022 direction to Mr. Goins to remove his name form the ballot.  He nevertheless filed an appeal by April 23, 2022, with the TRP, sending a copy of the notice to the Tennessee Coordinator of Elections—Defendant Goins. *See* **Exhibit L**.

# V. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1983: QUALIFICATIONS CLAUSE**
**(by Mr. Starbuck against Mr. Golden, TRP, Mr. Goins, and Mr. Hargett)**

55.     Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

56.     In conducting primary elections under state statutory authority, the TRP is a state-actor regulated by constitutional requirements in the same way as the state itself:

> We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the state in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes; the duties do not become matters of private law because they are performed by a political party.

*Smith v. Allwright*, 321 U.S. 649, 663 (1944); *see also Morse v. Republican Party of Virginia*, 517 U.S. 186, 187 (1996) ("Party 'act[ed] under authority' of Virginia when it picked its candidate at the convention and certified the nominee for automatic placement on the general election ballot").

57.     The Supreme Court has expressly applied constitutional electoral requirements to party primaries and preemptively rejected the potential excuse that unconstitutional restrictions on candidacy in primaries is harmless because candidates can choose to appear on the general election ballot without party affiliation: "[the Court] can hardly accept as reasonable an alternative that requires candidates and voters to abandon their party affiliations in order to avoid the burdens" that were unjustifiably imposed by state law. *Bullock v. Carter*, 405 U.S. 134, 147 (1972).

58.     As a state-actor bound by the Constitution, the TRP is bound by the Qualifications clause, which provides the fixed and exclusive qualifications for candidates for the United States House of Representatives and Senate. In *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995),

the Supreme Court struck down an Arkansas state constitutional provision that applied a term limit restriction on congressional candidates who wished to appear on the electoral ballot:

> The Framers decided that the qualifications for service in the Congress of the United States be fixed in the Constitution and be uniform throughout the Nation. . . . In the absence of a properly passed constitutional amendment, allowing individual States to craft their own qualifications for Congress would thus erode the structure envisioned by the Framers, a structure that was designed, in the words of the Preamble to our Constitution, to form a "more perfect Union."

*Id*. at 837–38. The Supreme Court's holding was not limited to the Arkansas term limits provision, it was expansive and rejected the constitutionality of any state-imposed requirements for congressional candidacy beyond those fixed in the Qualifications Clause of the Constitution. *Id*. at 783 ("If the qualifications set forth in the text of the Constitution are to be changed, that text must be amended.").

59.     The TRP residency requirement for eligibility as a candidate in its primary (whether grounded in a misperception of the Party's Bylaws or a misperception of state law requirements) constitutes the kind of unconstitutional, additional qualification of congressional candidates that *Term Limits* holds is unconstitutional. The Ninth Circuit addressed the question of whether *Term Limits* applies to residency requirements for congressional candidates in *Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000). In *Schaefer*, the Ninth Circuit rejected California's de facto residency requirement for congressional candidates to be eligible to appear on the ballot.

60.     The Court used the two-element inquiry set forth by the Supreme Court in *Term Limits*, which finds a state-imposed additional requirement for congressional candidacy unconstitutional when either 1) the requirement creates an absolute bar to candidates otherwise qualified under the Qualifications Clause, or 2) the requirement has the likely effect of handicapping an otherwise qualified class of candidates. *Id*. at 1035. The Ninth Circuit determined that the residency requirement had:

. . . the likely effect of handicapping the class of nonresident candidates who would otherwise meet the requirements of the Qualifications Clause. Therefore, because states do not have the power to add to or alter the requirements enumerated in the Qualifications Clause, [the residency requirement was] unconstitutional insofar as it require[d] candidates for the state's delegation to the House of Representatives to reside in the state prior to election.

*Schaefer v. Townsend*, 215 F.3d 1031, 1039 (9th Cir. 2000).

61.     The TRP's decision to disqualify Mr. Starbuck is essentially a camouflaged residency requirement, which it arrives at by a contorted, arbitrary application of its authority to limit primary candidates to bona fide party members.  It is therefore an unconstitutional violation of the Qualifications Clause of the United States Constitution. U.S. Const. Art. 1 § 2; U.S. Const. Art. 1 § 5.

62.     As noted above, the TRP "defines the term 'bona fide Republican' as:

 . . . either  . . [an] individual who has voted in at least three of the four most recent Statewide Republican primary election; *or* [an] individual who is vouched for in writing . . . by an officer of the TRP or a member of the CEC . . . of the County and/or District where said individual resides."

Bylaws, Art. IX, § 1, cls. A-C (**Exhibit A**). In Mr. Starbuck's case, however, the TRP arbitrarily limited itself to considering *only* the former requirement, which is tantamount to an unconstitutional requirement that candidates reside in the state for at least or more than three years in order to be eligible as a candidate for the United States House of Representatives. *Schaefer v. Townsend*, 215 F.3d 1031, 1039 (9th Cir. 2000).

63.     Despite Mr. Starbuck providing the SEC with evidence of hundreds of Tennessee voters, county GOP leaders, and national GOP politicians who vouched for him, the SEC nonetheless determined that Mr. Starbuck is not a bona fide Republican. The TRP's actions do not reflect a genuine, objective standard by which it would consider anyone, regardless of their Republican credentials, to be a bona fide Republican if they did not vote in three out of the last

four Republican primary elections. Instead, the only real standard that the TRP has decided to apply is the residency requirement, which the Secretary of State had already determined was inapplicable. And to the extent the TRP applied a requirement that a candidate must vote in three out of the last four *Tennessee* statewide Republican primary elections, or that they have been resident for a period of years, those requirements are an unconstitutional residency requirement.

64.     Indeed, one member of the SEC who voted to disqualify Mr. Starbuck, Angie McClanahan, expressly stated that she believed she was bound by Tennessee's newly enacted residency requirement, even though the state has determined that it cannot apply that law retroactively. *See*, *supra*, n.5. That law is also currently being challenged in Court as a violation of the Qualifications Clause. *Collins et al. v. State of Tennessee et al.*, Case No. 3:22-cv-225, M.D. Tenn. March 31, 2022).

65.     The Constitution's grant of power to the states "to prescribe the procedural mechanisms for federal elections" does not include the ability "to dictate electoral outcomes, to favor or disfavor a class of candidates, or to evade important constitutional constraints." *Cook v. Gralike*, 531 U.S. 510, 523 (2001). As the TRP is a state-actor bound by the constitution in its administration of its party primary, the TRP may not impose an additional requirement on candidates for congressional office. To do so constitutes an unconstitutional handicapping of the class of nonresident candidates who otherwise satisfy the Qualifications Clause, and the state cannot simply rubber stamp the TRP's attempted unlawful gatekeeping.

66.     Accordingly, the TRP's de facto residency requirement that resulted in Mr. Starbuck's removal from the TRP primary ballot is unconstitutional and invalid.

67.     Mr. Starbuck seeks a declaratory judgment that the TRP's directive to Mr. Goins and Tennessee's subsequent action to disqualify Mr. Starbuck's candidacy were arbitrary, capricious, and/or contrary to law, and therefore void.

68.     Mr. Starbuck also seeks an injunction prohibiting the state from removing Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

69.     Plaintiff also seeks attorney fees for vindicating his constitutional rights and enforcing federal law under 42 U.S.C. § 1983. 42 U.S.C. § 1988.

**SECOND CLAIM FOR RELIEF**
**VIOLATION OF 42 U.S.C. § 1983: DUE PROCESS**
**(by Mr. Starbuck against Mr. Golden, TRP, Mr. Goins, and Mr. Hargett)**

70.     Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

71.     To establish a claim of procedural due process, Mr. Starbuck must show that: (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford adequate procedural rights. *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019).

72.     The Sixth Circuit has long held that given the integral relationship between candidacy and voters' rights under the First Amendment, candidacy may involve some level of a protected property or liberty interest. *Miller v. Lorain Cty. Bd. of Elections*, 141 F.3d 252, 260 n.8 (6th Cir. 1998); *see also See Becton v. Thomas*, 48 F. Supp. 2d 747, 758 (W.D. Tenn. 1999) (the "freedom to run for political office . . . qualif[ies] as a liberty interest protected by the Due Process Clause.") (collecting cases in which the court found a protectable liberty interest in running for office).

73.     In reliance on the law and the Bylaws of the TRP, Mr. Starbuck invested heavily in his membership in the Republican Party and his candidacy, devoting extensive time and efforts to supporting the Party's efforts and seeking its nomination. His membership in his Party and his candidacy are also an integral part of his exercise of his First Amendment rights to speech and association, through which he works and advocates to address public policy issues.

74.     Accordingly, Mr. Starbuck's right to run in the Republican primary in Tennessee's 5th Congressional District is a liberty interest protected by the Fourteenth Amendment.

75.     As alleged herein, the TRP deprived Mr. Starbuck of this liberty interest by disqualifying him from the ballot.

76.     The requirements for due process, depending on the circumstances, may include:

a.     An unbiased tribunal.

b.     Notice of the proposed action and the grounds asserted for it.

c.     Opportunity to present reasons why the proposed action should not be taken.

d.     The right to present evidence, including the right to call witnesses.

e.     The right to know opposing evidence.

f.     The right to cross-examine adverse witnesses.

g.     A decision based exclusively on the evidence presented.

h.     Opportunity to be represented by counsel.

i.     Requirement that the tribunal prepare a record of the evidence presented.

j.     Requirement that the tribunal prepare written findings of fact and reasons for its decision.

Friendly, "Some Kind of Hearing," 123 U. Pa. L. Rev. 1267, 1282 (1975); *see also Johnson v. Morales*, 946 F.3d 911, 922 (6th Cir. 2020) (factors to weigh to determine extent of procedural safeguards).

77. In this case, the TRP did not initially notify Mr. Starbuck of the allegations against him, leaving him to react to accurate rumors that complaints had been lodged and casting a chilling and damaging cloud over his candidacy. The TRP's bylaws and Tennessee state law limit the TRP's authority solely to confirming that Mr. Starbuck was a Republican, and the TRP's Bylaws provide that this is accomplished through the submission of vouching letters from TRP officials (which Mr. Starbuck provided in abundance along with other evidence). Yet it has become evident that the 13 TRP members voting against Mr. Starbuck did not make their decision on that basis or based on the germane evidence before them. Accordingly, he was not informed of the actual standard and evidence, that is, the grounds asserted for the TRP's proposed action. This deprived him of an opportunity to present reasons why action should not be taken on those grounds, including evidence relevant to those grounds. He of course was not given the opportunity to cross-examine witnesses, and the evidence he presented was addressed to the standards contained in Tennessee law and the TRP's bylaws, not the actual standards or issues the TRP was in fact deliberating about. There TRP does not appear to have prepared a record of the evidence presented, the findings it made, or an explanation of the reasons for its decision. These circumstances, combined with hostile statements made by certain TRP's SEC members denigrating Mr. Starbuck, the potential improper influence of state Senator Niceley's potentially unconstitutional and inapplicable residency requirement – which Mr. Starbuck satisfies in any event, and that the effect of the TRP's disqualifications was to clear a path for the candidacy of the former Chair of the TRP,

Beth Harwell, further indicate that Mr. Starbuck's matter was not considered by an unbiased tribunal.

78.     In sum, Mr. Starbuck's disqualification had none of the hallmarks of genuine due process.

79.     The Secretary of State and the Coordinator of Elections offered no further due process, even after Mr. Starbuck alerted the state to the TRP's violations of law.

80.     Accordingly, under all of these circumstances and in particular the SEC's deviation from the sole issue it was empowered to decide and disregard of the sole applicable standard, Mr. Starbuck was not given a meaningful opportunity to "present reasons . . . why the proposed actions should not be taken" to the SEC. *Cleveland Bd. of Educ. v. Loudermill* (1985) 470 U.S. 532, 546 ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement").

81.     Pursuant to Tennessee Elections Code section 2-5-204(b), Mr. Starbuck also timely notified the TRP and Mr. Goins on April 23, 2022, that he wished to appeal his removal from the ballot, despite not receiving notice from the TRP by certified mail of its decision.  Neither responded.

82.     These deprivations of Mr. Starbuck's due process rights under color of state law are actionable under and may be redressed by 42 U.S.C. § 1983.

83.     Mr. Starbuck seeks a declaratory judgment that the TRP's directive to Mr. Goins and Tennessee's subsequent action to disqualify Mr. Starbuck's candidacy were arbitrary, capricious, and/or contrary to law, and therefore void.

84.     Mr. Starbuck also seeks an injunction prohibiting the state from removing Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

85.     Mr. Starbuck also seeks attorney fees for vindicating his constitutional rights and enforcing federal law under 42 U.S.C. § 1983. 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF 42 U.S.C. § 1983: INTERFERENCE WITH
## FIRST AMENDMENT RIGHTS UNDER COLOR OF STATE LAW
### (by Mr. Starbuck against Mr. Golden, TRP, Mr. Goins, Mr. Hargett)

86.     Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

87.     The State has the power under the U.S. Constitution to determine the time, place, and manner of elections (U.S. Const. Art. I, § 4, cl. 1).[7] But this power "to create procedural regulations" does not "provide States with license to exclude classes of candidates from federal office." *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 816 (1995).

88.     The Tennessee legislature has delegated to the TRP the ostensible power to instruct the state to end a citizen's otherwise qualified federal candidacy by directing the state to remove that citizen's name from the election ballot.  *See* Tenn. Code Ann. §§ Section 2-5-101(g)(1)(E), 2-5-204(b)(1)(B); 2-13-104.  But this power is narrowly circumscribed by state law. A political party's only such authority is restricted to the question of whether the candidate is a bona fide member of that party – nothing else.  *See* Tenn. Code Ann. § 2-13-104.

---

[7]     The August 2022 primary election at issue is also a federal election regulated by federal law. *See, e.g.*, 52 U.S. Code 30101, *et seq*. (Federal Election Campaign Act); *id.* at 30101 (defining an "election" to include a party primary).

89.     When the TRP exercises its authority under state law to control access to the ballot in a federal election administered by the state, and when the state acts upon that that instruction in the administration of a federal election, both the Party and the state are bound by basic Constitutional protections, including the First Amendment and Due Process.

90.     The issue here is Mr. Starbuck's access to the ballot.  "Ballot access cases . . . implicate First Amendment rights, and when such fundamental rights are violated—as when a candidate is unconstitutionally deprived of access to the ballot," in which case "irreparable harm can be presumed." *See Esshaki v. Whitmer*, 455 F. Supp. 3d 367, 380 (E.D. Mich. 2020) (citing *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 412 (6th Cir. 2014)). ("The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens." *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983).)

91.     Mr. Golden, in his official capacity as the Chairman of the TRP, maliciously and under color of state law, deprived Mr. Starbuck of his First Amendment rights under the United States Constitution, including ballot access, which is secured through the Fourteenth Amendment. *Anderson v. Celebrezze* (1983) 460 U.S. 780, 799 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

92.     The TRP has abused its authority in removing Mr. Starbuck from the primary ballot for the 5th Congressional District election under the false pretext that Mr. Starbuck is not a "bona fide" Republican Party member, despite the fact that there is no basis whatsoever under the Party's rules or the evidence that was before the Party to conclude that Mr. Starbuck is not a bona fide Republican.  Indeed, there is prima facie evidence in admissions by Mr. Golden and other members of the SEC subcommittee making the decision that it was *not* based on whether he was a bona fide

Republican, but rather some impermissible factor(s) neither disclosed nor, certainly, justified by law or the TRP's Bylaws.

93.     Because the basis of the TRP's decision is outside the narrow scope of its power under Tennessee law and its own Bylaws, that decision was ultra vires, or "beyond the scope of power allowed or granted by a corporate charter or by law." Black's Law Dictionary (11th Ed. 2019). "[*U]ltra vires* acts bear no legitimate force in a government under the law. A public act without legitimate force is indistinct under the law from an act that never was, or an act that has been voided." *Gentry v. Deuth*, 456 F.3d 687, 697 (6th Cir. 2006) (italics in original).

94.     The TRP's instruction to the state to remove Mr. Starbuck from the primary ballot in the upcoming election in the 5th Congressional District election for reasons beyond its narrowly prescribed lawful power to disqualify non-Republicans, was therefore arbitrary, capricious, unsupported by the evidence, and contrary to law.

95.     In depriving Mr. Starbuck of his ability to be placed on the primary ballot for the upcoming election in the 5th Congressional District, Mr. Golden committed these unlawful violations under color of state law in bad faith and with malicious purpose in reckless disregard of Mr. Starbuck's First Amendment rights. *Clements v. Fashing*, 457 U.S. 957, 958 (1982) ("Decision in this area of constitutional adjudication is a matter of degree, and involves a consideration of the . . . the interests the state seeks to protect by placing restrictions on candidacy"); *Randall v. Scott*, 610 F.3d 701, 714 (11th Cir. 2010) (First Amendment right to run for political office).

96.     But for the unlawful actions of the Defendants, Mr. Starbuck would be able to exercise his First Amendment right to run for office.

97.     This deprivation under color of state law is actionable under and may be redressed by 42 U.S.C. § 1983.

98. Mr. Starbuck seeks a declaratory judgment that the TRP's directive to Mr. Goins and Tennessee's subsequent action to disqualify Mr. Starbuck's candidacy were arbitrary, capricious, and/or contrary to law, and therefore void.

99. Mr. Starbuck also seeks an injunction prohibiting the state from removing Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

100. Plaintiff also seeks attorney fees for vindicating his constitutional rights and enforcing federal law under 42 U.S.C. § 1983. 42 U.S.C. § 1988.

### FOURTH CLAIM FOR RELIEF
### VIOLATION OF TENNESSEE OPEN MEETING ACT ("TOMA")
### (by Mr. Starbuck against Mr. Golden and TRP)

101. Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

102. The Tennessee legislature delegated to state political parties, such as the TRP, significant authority regarding the administration of elections in Tennessee, including federal elections. Tennessee law requires "[e]ach political party [to] have a state executive committee which shall be the state primary board for the party." Tenn. Code Ann. § 2-13-102(a).

103. The Party's state executive committee, as the state primary board, "*shall* perform the duties and exercise the powers required by this title [Title 2] for its party." Tenn. Code Ann. § 2-13-102(b) (emphasis added).

104. The Tennessee Code mandates that meetings of the SEC acting as the primary board take place in accordance with the TOMA. *See* Tenn. Code Ann. § 2-13-108(a).

105. Even though the August 2022 primary election is an election administered by the state for a federal office, the SEC has narrow authority under the law in Title 2 to disqualify a

candidate for one reason only. In Title 2, the legislature gave parties the authority to "require by rule that candidates for its nomination be bona fide members of the party." Tenn. Code Ann. § 2-13-104; *see also Alexandria-Williams v. Goins*, No. W201801024COAR10CV, 2018 WL 3198799, at *1 & n.2 (Tenn. Ct. App. June 26, 2018) (citing Tenn. Code Ann. § 2-13-104 as the authority by which parties may disqualify candidates).

106. The TRP has the authority to instruct the state to remove a candidate on the grounds that the candidate is not a bona fide Republican. *See* Tenn. Code Ann. §§ Section 2-5-101(g)(1)(E), 2-5-204(b)(1)(B); 2-13-104. The TRP's SEC claimed it was exercising this authority under Title 2 of the Tennessee Code to disqualify non-bona fide Republicans when it ordered the state to remove Mr. Starbuck's name from the ballot.

107. The SEC was therefore acting pursuant to a power granted to it by the state in Title 2 of the Tennessee Code and subject to the TOMA when it directed the state to remove Mr. Starbuck from the ballot.

108. The Tennessee legislature enacted the TOMA based on the policy that "public business . . . shall not be conducted in secret." Tenn. Code Ann. § 8-44-101(a). The TOMA governs "[a]ll meetings of any governing body . . . except as provided by the Constitution of Tennessee." Tenn. Code Ann. § 8-44-102(a). The term "governing body," in turn, includes the "members of any public body which consists of two (2) or more members, with the authority to make decisions for or recommendations to a public body on policy or administration," along with certain other bodies not relevant here. Tenn. Code Ann. § 8-44-102(b)(1)(A).

109. Public notice is one of the bedrock requirements of the TOMA. Aside from the notice requirement pertaining to regular meetings held pursuant to statute, ordinance, or resolution, the TOMA requires "adequate public notice" of any special meeting, that is, a meeting "not

previously scheduled by statute, ordinance, or resolution, or for which notice is not already provided by law[.]" Tenn. Code Ann. § 8-44-103(b). The notice required by statute must be sufficient to "give[] interested citizens a reasonable opportunity to exercise their right to be present at a governing body's meeting." *Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 150 (Tenn. Ct. App. 1998) (quoting *State ex rel. Akin v. Town of Kingston Springs,* No. 01–A–01–9209–CH00360, 1993 WL 339305, at *5 (Tenn. Ct. App. Sept. 8, 1993)). There are three requirements to public notice:

a.    First, the notice must be posted in a location where a member of the community could become aware of such notice.

b.    Second, the contents of the notice must reasonably describe the purpose of the meeting or the action proposed to be taken.

c.    Third, the notice must be posted at a time sufficiently in advance of the actual meeting in order to give citizens both an opportunity to become aware of and to attend the meeting.

*Englewood Citizens for Alternate B v. Town of Englewood*, No. 03A01-9803-CH-00098, 1999 WL 419710, at *2 (Tenn. Ct. App. June 24, 1999)

110.    The TOMA further requires that the "minutes of a meeting of any such governmental body…be promptly and fully recorded" and be "open to public inspection[.]" Tenn. Code. Ann. 8-44-104(a). Minute notes must "include, but not be limited to, a record of persons present, all motions, proposals and resolutions offered, the results of any votes taken, and a record of individual votes in the event of roll call." *Id.*

111.    The TOMA further prohibits "secret votes," "secret ballots," and "secret roll calls." Tenn. Code Ann. § 8-44-104. Instead, "[a]ll votes…shall be by public vote or public ballot or public roll call."

112.    Here, the TRP's SEC and Mr. Golden violated the TOMA when a subset of the SEC met in secret and took a secret vote to terminate Mr. Starbuck's federal candidacy, with no public notice or opportunity for participation whatsoever. There are no available minutes documenting the discussions and votes take to block Mr. Starbuck's candidacy. Absent any such evidence, the decision was made in secret, and therefore in violation of the TOMA. Thus, Mr. Starbuck will be forced to rely on discovery in order to ascertain the actual standards, factual bases, and procedures for disqualifying him.

113.    The Tennessee legislature granted recognized political parties, such as the TRP, authority in allowing them to decide which candidates can participate in an election administered by the state, even a federal election. But when exercising this authority, the Tennessee Code requires parties to comply with the TOMA, including notice and public participation. The TRP's secret vote at a non-public meeting without any records plainly violated the TOMA.

114.    The TOMA provides Mr. Starbuck with a clear remedy: "Any action taken at a meeting in violation of this part shall be void and of no effect; provided, that this nullification of actions taken at such meetings shall not apply to any commitment, otherwise legal, affecting the public debt of the entity concerned." Tenn. Code Ann. § 8-44-105; *see also Van Hooser v. Warren Cty. Bd. of Educ.*, 807 S.W.2d 230, 237 (Tenn. 1991) ("Because this action was taken in violation of the Open Meetings Act, the board's attempted settlement of this controversy by approval of the Conditions for Continued Employment is void and of no effect.").

115.    The TRP SEC's decision to disqualify Mr. Starbuck and remove him from the primary ballot is therefore void.

116.    Mr. Starbuck seeks a declaratory judgment that the TRP's directive to Mr. Goins to disqualify Mr. Starbuck's candidacy violated the TOMA and is therefore void.

117.     He also seeks an injunction prohibiting the state from removing Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

### FIFTH CLAIM FOR RELIEF
### BREACH OF CONTRACT
#### (by Mr. Starbuck against Mr. Golden and TRP)

118.     Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

119.     Mr. Starbuck has an enforceable contract with Mr. Golden and the TRP to be a candidate in the August 2022 federal primary election.  The Tennessee Supreme Court has held that an organization's bylaws can constitute an enforceable contract, and that the organization is contractually required to follow its own bylaws.  *Lewisburg Cmty. Hosp. Inc. v. Alfredson*, 805 S.W.2d 756, 756-57 (Tenn. 1991) (holding that "medical staff bylaws constitute a contract between a hospital and a member of the medical staff" and that members of the medical staff have "a contractual right to require the Hospital to follow its bylaws").

120.     The terms of the TRP's Bylaws establish that an individual who is an active member of the party and a bona fide Republican can participate in primary elections.  Mr. Starbuck accepted the TRP's offer and was an active member of the TRP and is a bona fide Republican.  He provided valuable consideration in his contributions to the party, both monetary and non-monetary.

121.     Mr. Golden and the Party breached this contract by, among other things, instructing the state to terminate Mr. Starbuck's federal candidacy by removing him from the ballot, even though Mr. Starbuck performed the terms of the contract by meeting all eligibility requirements to run as a bona fide Republican in the primary election.

122.     Mr. Starbuck has been harmed, both financially and in other ways, by Mr. Golden and the Party's breach of their contract by being removed from the ballot.

123.     Monetary damages are not an adequate remedy for this breach; specific performance is the only remedy that can adequately protect Mr. Starbuck's contractual rights.

124.     Mr. Starbuck seeks a declaratory judgment that the TRP breached a contract when it issued its directive to Mr. Goins to disqualify Mr. Starbuck's candidacy.

125.     He also seeks an injunction and/or order of specific performance directing the TRP to rescind its direction to remove Mr. Starbuck's name from the August 2022 federal primary ballot for U.S. Representative of Tennessee's 5th Congressional District and to direct the state to reinstate Mr. Starbuck's name on the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

126.     Although monetary damages cannot fully redress the harms Mr. Starbuck will suffer from being kicked off the ballot, Mr. Golden's and the TRP's breach of the TRP's bylaws have damaged Mr. Starbuck monetarily too.  Mr. Starbuck therefore seeks damages against Mr. Golden and the TRP on his breach of contract claim.

**SIXTH CLAIM FOR RELIEF**
**PROMISSORY ESTOPPEL**
**(by Mr. Starbuck against Mr. Golden and TRP)**

127.     Mr. Starbuck re-alleges and incorporates by reference all of the preceding paragraphs in this Verified Complaint as though fully set forth herein.

128.     Although there is an existing, enforceable contract between the parties covering the subject matter of this dispute, Mr. Starbuck brings this cause of action in the alternative.

129.     Mr. Golden and the Party promised to permit candidates who met certain eligibility requirements to run in the primary election for the Republican nomination to represent the 5th

District of Tennessee in the United States Congress and to allow the voters to decide whether those candidates will represent them in the general election.

130.    Mr. Golden and the Party's promise was unambiguous and not unenforceably vague.

131.    It was reasonably foreseeable to Mr. Golden and the Party that Mr. Starbuck would act upon their promise to run in the party's primary and would suffer economic detriment through the loss of his time and expenditure of resources to do so.

132.    Mr. Starbuck did in fact reasonably rely upon Mr. Golden and the Party's promise to his detriment, including by completing all the requirements to appear on the ballot in the August 2022 federal primary election for the office of United States Representative, suffering economic detriment in the form of lost time and opportunities and personal expenditures.

133.    Mr. Starbuck seeks a declaratory judgment that the TRP was estopped form issuing its directive to Mr. Goins to disqualify Mr. Starbuck's candidacy and therefore that decision is void.

134.    He also seeks an injunction and/or order of specific performance directing the TRP to rescind its direction to remove Mr. Starbuck's name from the August 2022 federal primary ballot for U.S. Representative of Tennessee's 5th Congressional District and to direct the state to reinstate Mr. Starbuck's name on the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

135.    Although monetary damages cannot fully redress the harms Mr. Starbuck will suffer from being kicked off the ballot, Mr. Starbuck has suffered monetary harm from his reliance on Mr. Golden's and the TRP's promises too.  Mr. Starbuck therefore seeks damages against Mr. Golden and the TRP on his promissory estoppel claim.

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Mr. Starbuck asks the Court to enter judgment in his favor and against Defendants and to order the following relief:

1. A declaratory judgment that the Tennessee Republican Party's direction to Defendant Mark Goins to remove Mr. Starbuck's name from the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District was arbitrary, capricious, and/or contrary to law, and therefore void.

2. A declaratory judgment that the state's disqualification of Mr. Starbuck to be a candidate in the August 2022 federal primary election for the office of United States Representative at the direction of the Tennessee Republican Party was arbitrary, capricious, and/or contrary to law.

3. An injunction prohibiting and enjoining Mr. Goins and Mr. Hargett from removing Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District.

4. An order of specific performance directing Mr. Golden and the Tennessee Republican Party to rescind their instructions to remove Mr. Starbuck's name from the ballot for the August 2022 federal primary election for U.S. Representative of Tennessee's 5th Congressional District and ordering them to instruct Mr. Goins and Mr. Hargett to restore Mr. Starbuck's name to the ballot.

5. An award of damages against Mr. Golden and the Tennessee Republican Party on Mr. Starbuck's breach of contract and promissory estoppel claims.

6. An award of nominal damages to vindicate Mr. Starbuck's rights.

7.	An award in favor of Mr. Starbuck for his reasonable expenses, including attorneys' fees and costs (42 U.S.C. § 1988(b)), incurred as a result of bringing this Verified Complaint and accompanying Motion for Temporary Restraining Order and Preliminary Injunction;

8.	Any and all other relief that the Court deems just and proper.

## VERIFICATION

I, Robert Starbuck Newsom aka Robby Starbuck, declare as follows:

1.      I am the Plaintiff in this present case, a citizen of the United States of America, and a resident of Tennessee. I am eligible to vote and run for office in Tennessee's 5th Congressional District.

2.      I have personal knowledge of myself, my activities, and my intentions in running for office in Tennessee's 5th Congressional District as set forth in the foregoing *Verified Complaint for Declaratory and Injunctive Relief*, and if called on to testify I would competently testify to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions are true and correct, as are factual statements concerning the TRP, the TRP's SEC and their related activities and their intentions. 28 U.S.C. § 1746.

Executed on May 2, 2022 in Williamson County, Tennessee.

Robert Starbuck Newsom aka Robby Starbuck

Dated: May 2, 2022                          Respectfully submitted,


                                            /s/ *Eric G. Osborne*
                                            Eric G. Osborne (#29719)
                                            Mark Alexander Carver (#36754)
                                            SHERRARD ROE VOIGT & HARBISON, PLC
                                            150 Third Avenue South, Suite 1100
                                            Nashville, Tennessee 37201
                                            Tel. (615) 742-4200 | Fax. (615) 742-4539
                                            eosborne@srvhlaw.com
                                            acarver@srvhlaw.com

                                            David A. Warrington
                                            (special admission pending)
                                            Michael A. Columbo
                                            (special admission pending)
                                            DHILLON LAW GROUP INC.
                                            177 Post Street, Suite 700
                                            San Francisco, California 94108
                                            Tel. (415) 433-1700
                                            dwarrington@dhillonlaw.com
                                            mcolumbo@dhillonlaw.com

                                            *Counsel for Plaintiff Robert Starbuck Newsom*
                                            *aka Robby Starbuck*