## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| ROBERT STARBUCK NEWSOM, aka ROBBY STARBUCK, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 3:22-cv-00318 |
| v. | ) ) | CHIEF JUDGE WAVERLY D. CRENSHAW, JR. |
| SCOTT GOLDEN, in his official capacity as Chairman of the Tennessee Republican Party; the TENNESSEE REPUBLICAN PARTY; MARK GOINS, in his official capacity as Coordinator of Elections—Office of the Tennessee Secretary of State; and TRE HARGETT, in his official capacity as Tennessee Secretary of State | ) ) ) ) ) ) ) ) ) ) ) ) | MAGISTRATE JUDGE JEFFREY S. FRENSLEY |
| Defendants. | ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO DISMISS ALL CLAIMS AGAINST THE TENNESSEE REPUBLICAN PARTY AND SCOTT GOLDEN

The Tennessee Republican Party (the "TRP") and the Chairman of the TRP, Scott Golden (collectively referred to as the "TRP Defendants"), move to dismiss Plaintiff's Complaint (ECF No. 1) against them for multiple independent reasons under Fed R. Civ. P. 12(b)(6) and 12(h)(3). This Memorandum of Law is filed in support of that Motion.

Robert Starbuck Newsom ("Plaintiff" or "Starbuck") desires to be a candidate for the Republican nomination for the U.S. House of Representatives in Tennessee's Fifth Congressional District. However, the TRP's State Executive Committee ("SEC"), acting under the authority of Tenn. Code Ann. ("TCA") §§ 2-13-104 and 2-5-204, properly determined that Starbuck is not a bona fide Republican under the bylaws of the Tennessee Republican Party.

Starbuck now asks this Court to rule that the SEC was wrong. Starbuck argues that the

Court—instead of the TRP's SEC—should rule that he is a bona fide Republican because he allegedly "has been a steadfast rank-and-file Republican all of his life" and has allegedly done other things that should make him a bona fide Republican. Compl. ¶¶ 18, 21. Starbuck asks this Court to overrule the TRP SEC's purely private decision about party qualifications and to decide anew whether Starbuck is a bona fide Republican.

The Court, however, should not decide this private intra-party dispute about who is a bona fide Republican because that role is exclusively delegated to the TRP alone. TCA § 2-13-104; *Kurita v. State Primary Bd. of Tenn. Democratic Party*, No. 3:08-0948, 2008 WL 4601574, at *7 (M.D. Tenn. Oct. 14, 2008), *aff'd*, 472 F. App'x 398 (6th Cir. 2012); *see also State ex rel. Inman v. Brock*, 622 S.W.2d 36, 42-43 (Tenn. 1981) (discussing the legislative intent to keep the courts and the public sector out of "intra-party actions, reactions, and squabbles" by requiring those issues "to be settled within the party structure").

The Court should instead dismiss Starbuck's § 1983 claims because the TRP Defendants (1) are not state actors, and (2) Starbuck cannot show the deprivation of any right or privilege under the United States' Constitution or the laws of the United States. After dismissing Starbuck's § 1983 claims, the Court should then dismiss Starbuck's claims brought under Tennessee law because of the lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). However, even if the Court considers those pure Tennessee state law counts, it should still dismiss them because they also each fail to state a claim based on the alleged facts.

## I. RELEVANT BACKGROUND AND FACTS.

On March 22, 2022, Starbuck filed his nominating petition with the State Election Commission seeking to be candidate for U.S. House of Representatives in Tennessee's Fifth

WBD (US) 56377409v1

Congressional District. Compl. ¶ 22.[1] The nominating petition was due not later than noon on April 7, 2022. TCA § 2-5-101(a)(2); *see also* Qualifying Procedures for U.S. House of Representatives ("All candidates for U.S. House of Representatives must file their nominating petitions no later than 12:00 NOON on April 7, 2022.")[2]; Compl. ¶ 28 (confirming "April 7, 2022 filing deadline.").

Once a candidate files his or her nominating petition that meets the requirements, "[e]ach qualified candidate's name shall be placed on the ballot . . . **unless** <u>the executive committee with which a primary candidate filed the original petition determines that the candidate is not qualified under § 2-13-104</u>." TCA § 2-5-204(a) (emphasis added). Significantly, TCA § 2-13-104 expressly grants political parties the sole power and authority to "require by rule that candidates for its nominations be bona fide members of the party." § 2-13-104; *see State ex rel. Inman v. Brock*, 622 S.W.2d 36, 42-43 (Tenn. 1981).

TCA § 2-5-204(b)(2)(A) provides that "an executive committee that determines that a candidate is not qualified under § 2-13-104 [i.e., not a bona fide party member] shall file the committee's determination with the coordinator of elections no later than twelve o'clock (12:00) noon prevailing time on the seventh day after the qualifying deadline for the election." § 2-5-204(b)(2)(A) (emphasis added). Therefore, when the SEC of any party determines that a candidate is not a bona fide member of its political party, the SEC must communicate that decision to the coordinator of elections within 7 days after the initial qualifying deadline or it loses its right to do so. *Id.* Since the qualifying deadline was April 7, 2022, the TRP SEC was required to communicate any removal decisions to the Coordinator of Elections by April 14, 2022, which it did. *Id.*

---

[1] A person seeking to be a political party's nominee for a seat in the U.S. House of Representatives must first obtain and file a nominating petition. TCA §§ 2-5-104(b)(1), 2-5-103(b).

[2] *Available at* https://sos.tn.gov/elections/guides/qualifying-procedures-for-united-states-house-of-representatives. *See also* Fed. R. Evid. 201.

WBD (US) 56377409v1

On April 11, 2022, Starbuck was notified in writing that "**your candidacy was properly protested, and the [SEC] of the [TRP] has recommended the suspension of your candidacy**. It was determined that your candidacy did not currently meet the bona fide standard of the Tennessee Republican Party." Ex. I to Compl. (emphasis original); *see also* Compl. ¶ 35. To direct Starbuck to the relevant statute so he could determine his options on his own, including his right to file an appeal with the party and the coordinator of elections within 2 days, the notification also expressly referenced TCA § 2-5-204(b). Ex. I to Compl. In accordance with TCA § 2-5-204(b)(2)(A), the TRP also instructed the Coordinator of Elections to remove Starbuck from the Republican primary ballot within seven days after the qualifying deadline, i.e., by April 14, 2022. Compl. ¶¶ 3, 10, 13-14.[3]

After a candidate is removed from the ballot by the political party's SEC pursuant to § 2-13-104, the candidate may then file an appeal of that determination "with the executive committee and a copy of the appeal with the coordinator of elections within two (2) days of receipt of the notice from the executive committee." TCA § 2-5-204(b)(2)(B). Significantly, while a candidate has the ability to file an appeal, it must be done "within two (2) days of receipt of the notice from the executive committee." *Id.* The notice provided to Starbuck expressly informed him of the appeal option under TCA § 2-5-204(b) so he could further evaluate his options. *See* Ex. I to Compl.

If a political party is not persuaded by a timely appeal and maintains its position that the candidate is not a bona fide member of that party in accordance with § 2-13-104, the candidate's

---

[3] This removal communication to Starbuck and to the Coordinator of Elections was made before April 14, 2022 as required by law. TCA § 2-5-204(b)(2)(A) requires "an executive committee that determines that a candidate is not qualified under § 2-13-104" to file that determination with the coordinator of elections "no later than twelve o'clock (12:00) noon prevailing time on the seventh day after the qualifying deadline for the election." § 2-5-204(b)(2)(A) (emphasis added). The qualifying deadline was April 7th. *See* TCA § 2-5-101(a)(2); Compl. ¶ 28. Therefore, the TRP SEC's communication was required by April 14th and was made by the April 14th deadline.

WBD (US) 56377409v1

name will not appear on the ballot. TCA § 2-5-204(b)(2)(B). "Unless the coordinator of elections receives a letter . . . **withdrawing** the committee's determination of the candidate's disqualification no later than the close of business seven (7) days after the original withdrawal deadline, the candidate's name must be excluded from the ballot." *Id.* (emphasis added).[4] Therefore, in order for the TRP to restore Starbuck to the ballot, it would have had to have sent a second notice to the coordinator of elections after April 14, 2022 and by April 21, 2022, instructing him that the SEC's earlier determination removing Starbuck was being withdrawn. TCA § 2-5-204(b)(2)(B).

In this case, the TRP properly determined that Starbuck is not a bona fide Republican for candidacy to public office under § 2-13-104 and its bylaws, and it communicated that decision to Starbuck and to the coordinator of elections before April 14, 2022. Ex. I to Compl. Starbuck did not vote in at least three (3) of the four (4) most recent Statewide Republican primary elections and does not allege that he did. Compl. ¶¶ 1-135, Ex. D to Compl. Therefore, because Starbuck could not meet Article IX, § 1, Para. B of the bylaws based on his voting record, he attempted to separately meet the requirements of Para. C, which states the following:

> Any individual who is vouched for in writing (to the satisfaction of the decision makers defined herein) as a bona fide Republican by an officer of the TRP or a member of the CEC, excluding SEC members, of the County and/or District where said individual resides. The decision makers defined herein may require additional verification that said individual is indeed a bona fide Republican.

---

[4]A dissenting opinion from the Tennessee Supreme Court provides a summary of this process:

> [T]he August ballots cannot be finalized until fourteen days after the qualifying deadline. The candidates have seven days to withdraw. During that same seven-day window, the executive committees of the political parties may challenge certain candidates' inclusion on the ballot because they are not bona fide members of the party—and those candidates have another seven days to appeal their exclusion. Then the ballots can be printed . . . .

*See Moore v. Lee*, No. M202200434SCRDOCV, 2022 WL 1101833, at *6 (Tenn. Apr. 13, 2022) (citing TCA § 2-5-204(b)(1)-(2)) (Lee, S., dissenting) (emphasis added).

Ex. A to Compl., TRP Bylaws, Article IX.1.C (underline added). Starbuck submitted "vouching letters" from certain TRP officials as an attempt to satisfy the decision-makers that he was a bona fide Republican in accordance with the TRP bylaws. Compl. ¶¶ 31, 34. However, after considering the information submitted by Starbuck, on April 19, 2022, the TRP voted to uphold (i.e., not withdraw) Starbuck's earlier removal from the ballot. *Id.* ¶ 39-40, 48. Thirteen of the sixteen members present voted to uphold Starbuck's removal from the ballot. *Id.* Therefore, the TRP SEC did not restore Starbuck the ballot before the April 21st deadline provided by TCA § 2-5-204(b)(2)(B). Ex. K to the Compl.

On April 21, 2022, the TRP Chairman sent a letter to the Coordinator of Elections confirming those candidates who were restored by the TRP SEC in accordance with TCA § 2-5-204(b)(2)(B), and those who were not. *Id.* Starbuck was not restored. *Id.*

According to Starbuck's Complaint, Starbuck waited until Saturday, April 23rd to file an appeal (Ex. L to Compl.), which was after the TRP SEC's required April 21st deadline to restore him on the ballot per TCA § 2-5-204(b)(2)(B). Hence, according to the Complaint, Starbuck appealed the TRP SEC's failure to restore him to the ballot, which is not an allowed form of an appeal under TCA § 2-5-204(b)(2)(B). Compl. ¶¶ 54, 81.

Based on these facts, Starbuck alleges conspiracies about "a cabal of power-wielding party bosses meeting secretly," elected officials calling him a "Gucci Bagger," and other irrelevant claims to argue that the TRP is rigging elections. Compl. ¶¶ 1, 3, 27. The relevant facts, however, show that Starbuck simply did not meet the TRP's requirements to be a bona fide Republican.

## II.     STANDARD FOR MOTION TO DISMISS.

A complaint requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). But that statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

6

U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). It requires more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Id.*

A complaint must contain enough facts to establish a "plausible," as opposed to merely a "possible," entitlement to relief. *Harps v. TRW Automotive U.S., LLC*, 351 F. App'x. 52, 56 (6th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Plausibility" requires more than a "sheer possibility that a defendant has acted unlawfully." *Id.*

When considering a motion to dismiss, the Court must accept the Plaintiff's "well-pleaded allegations as true," however, "the assumption of truth does not extend to the Plaintiff's legal conclusions because '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Chrysler Grp., LLC v. Proactive Training Sols.*, No. 12-12351, 2012 WL 5029893, at *2 (E.D. Mich. Oct. 17, 2012) (citing *Iqbal*, 556 U.S. at 662). Moreover, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). "[M]atters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

## III.     ARGUMENT

### A.     Counts One Through Three of the Complaint Should Be Dismissed Because Starbuck Has Failed to Plead Facts Meeting the Fundamental Elements of a Claim Under 42 U.S.C. § 1983 and/or Fourteenth Amendment.

To prevail on his 42 U.S.C. § 1983 and/or Fourteenth Amendment claims (*see* Compl. ¶¶ 55-100), Starbuck must prove <u>both</u> that the TRP: (1) acted under the color of state law (i.e., was a

7

state actor); <u>and</u> (2) deprived Starbuck of some right or privilege secured by the Constitution or laws of the United States. *Banchy v. Republican Party of Hamilton Cnty.*, 898 F.2d 1192, 1194 (6th Cir. 1990); *Federspiel v. Ohio Republican Party State Cent. Comm.*, 867 F. Supp. 617, 621 (S.D. Ohio 1994). As set forth below, Starbuck has failed to meet both elements.

1. **The TRP Defendants Are Not "State Actors" Under 42 U.S.C. § 1983 and the Removal of Starbuck Under Authority of TCA § 2-3-104 is a Purely Private Act.**

To survive a motion to dismiss, Starbuck "must first allege a set of facts that show there was 'state action'" by the TRP. *Federspiel*, 867 F. Supp. at 621. To constitute state action, "'[t]he deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . .'" *Kurita*, 2008 WL 4601574, at *7 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). In other words, Starbuck must prove that each TRP Defendant was "acting under the color of state law" in removing Starbuck from the ballot. *Federspiel,* 867 F. Supp. at 621; *see also Campbell v. PMI Food Equip. Grp., Inc.,* 509 F.3d 776, 784 (6th Cir. 2007) (affirming the dismissal of section 1983 claims for lack of state action).

Starbuck purports to establish state action by asserting that the TRP "conduct[s] primary elections under [Tennessee] state statutory authority," Compl. ¶ 56, which allows the TRP to require TRP candidates to be "a bona fide member" of the TRP. *Id.* ¶¶ 42, 88. Starbuck is wrong. First, an SEC's private determination of whether a candidate is a bona fide member of its political party in accordance with TCA § 2-3-104 is not conducting a primary election, and is a purely private act. Further, merely because the TRP has chosen to do something that the state has granted it the authority to do (i.e., determine who is a bona fide party member) does not mean that the voluntary action of the party becomes state action. *See Banchy*, 898 F.2d at 1195; *Kurita*, 2008 WL 4601574, at *7. The TRP Defendants' voluntary removal of Starbuck pursuant to TCA § 2-

8

13-104 is not state action.

In determining whether the conduct of private parties like the TRP Defendants may constitute state action, the Sixth Circuit applies three tests: (1) the public function test, (2) the symbiotic relationship or nexus test, or (3) the state compulsion test. *Campbell,* 509 F.3d at 784 (citing *Chapman v. Higbee Co.,* 319 F.3d 825, 833 (6th Cir. 2003)). Starbuck's allegations are not state action under any of these tests. In fact, courts consistently reject similar state action theories like the theory Starbuck relies in alleging that TRP is a state actor.

### a. Starbuck's state action allegations fail under the public function test.

To satisfy the public function test, which is very narrowly construed, Starbuck must allege facts showing that the private actor "perform[ed] a public function which has traditionally *and* exclusively been reserved to the State." *Durante v. Fairlane Town Ctr.,* 201 F. App'x. 338, 341 (6th Cir. 2006) (emphasis original) (citing *Jackson v. Metro Edison Co.*, 419 U.S. 345, 352 (1974)). It is not enough that the function has been traditionally performed by the State in the past, but it must be <u>exclusively reserved</u> to the State. *Id.* (emphasis added). "This test is difficult to satisfy." *Id.* In *Kurita,* this Court concluded that a Tennessee political party's activities related to resolving party nomination contests and choosing party nominees cannot meet the public function test because those activities have never been traditionally and exclusively reserved to the State of Tennessee. *Kurita*, 2008 WL 4601574, at *7 (noting that "[t]he power to select a nominee for a political party has never been reserved traditionally and exclusively to the State of Tennessee" and that "just the opposite is true"). In fact, "the Tennessee General Assembly expressly disclaimed any role of state government in resolving party nomination contests and instead reserved power exclusively to the political party to choose the nominee whose name will appear on the general election ballot." *Id.* (citing TCA § 2-17-104(c)).

Starbuck cannot state a claim under section 1983 against the TRP Defendants because

political parties are expressly granted the authority to "require by rule that candidates for its nominations be bona fide members of the party." TCA §§ 2-13-104 & 2-5-204(a). The State of Tennessee does not have **any** role in choosing what candidates are bona fide members of a particular political party and therefore Starbuck's claims cannot meet the requirements of the public function test. *See Durante,* 201 F. App'x. at 341 (must be a public function that "has traditionally and exclusively been reserved to the State," noting that "[w]hile many functions have been performed traditionally by governments, very few have been exclusively reserved to the State"); *Kurita*, 2008 WL 4601574, at *7 (same).

### b. Starbuck's state action allegations fail under the symbiotic or nexus test.

To the extent that Starbuck attempts to rely on the symbiotic relationship or nexus test, that also must fail because there is no nexus or symbiotic relationship between the State of Tennessee and political parties in relation to the determination of whether someone is a bona fide member of a political party. Under the symbiotic relationship or nexus test, "'the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly attributed to the state itself.'" *Kurita*, 2008 WL 4601574, at *9 (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). This Court in *Kurita* already confirmed that the Tennessee General Assembly's delegation of power to political parties to choose party nominees and to resolve their own nominating contests prior to the general election "is antithetical to state action." *Id.* at *9. Even more than the nominating contests discussed in *Kurita*, courts and the Tennessee legislature have no role in determining whether an individual is a bona fide member of a particular political party. *See* TCA §§ 2-13-104, 2-5-204(a). Tennessee has no nexus or symbiotic relationship with the TRP's activities in choosing its own nominees.

### c. Starbuck's state action allegations fail under the state compulsion test.

Finally, Starbuck's allegations also do not sufficiently plead state action under the state compulsion test. "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *S.H.A.R.K. v. Metro Parks Serving Summit Cty.*, 499 F.3d 553, 565 (6th Cir. 2007).

Starbuck's allegations easily do not meet this test because he does not allege that the State controlled any of the TRP Defendants' activities. In fact, Starbuck expressly alleges that the State relinquished those roles to the political parties. Compl. ¶ 42 ("State law [] permits the Party to block candidates who are not bona fide Republicans." (citing TCA § 2-13-104)); *id.* at ¶ 6; *id.* ¶ 88 ("The Tennessee legislature has delegated to the TRP the [] power to . . . direct[] the state to remove [a] citizen's name from the election ballot.").

### d. Courts consistently reject the state action theory upon which Starbuck relies.

Starbuck claims that the TRP Defendants are "state actors" due to the fact that the TRP "conduct[s] primary elections under [Tennessee] state statutory authority." Compl. ¶ 56. To support his state action theory, Starbuck primarily relies on the 1944 U.S. Supreme Court case *Smith v. Allwright*, 321 U.S. 649, 663 (1944). *Id.* Such reliance is misplaced. As articulated in the more recent SCOTUS case, *California Democratic Party v. Jones*, the Court in *Smith* "held <u>not</u> that party affairs are public affairs, . . . but only that, when a State prescribes an election process that gives a special role to political parties, the parties' discriminatory action becomes state action." 530 U.S. 567, 567–68 (2000) (internal citations omitted). Starbuck has not (and in good faith cannot) allege that he was subjected to discrimination by the TRP based on an immutable characteristic, or that he was treated differently because of his membership in a protected class.

Starbuck also improperly relies on *Morse v. Republican Party of Virginia*, 517 U.S. 186,

WBD (US) 56377409v1

187 (1996), *see* Compl. ¶ 56. Contrary to what Starbuck implies, *Morse* does not in any way declare that all party nomination processes constitute state action. *See Morse*, 517 U.S. at 238 (Breyer, J., concurring) ("We need not go further in determining when party activities are, in effect, substitutes for state nominating primaries because the case before us involves a nominating convention that resembles a primary about as closely as one could imagine."); *see also Marts v. Republican Party of Va., Inc.*, No. 5:17-CV-00022, 2018 WL 1595629, at *3 (W.D. Va. Mar. 31, 2018), *aff'd*, 744 F. App'x. 806 (4th Cir. 2018) ("[P]laintiffs seize on Justice Stevens's quoted language [in *Morse*] to assert that any process that selects the candidates who will appear on a general election ballot constitutes state action. However, this court notes that *Morse* was a plurality decision, and Justice Breyer's concurring opinion did not declare that all party nomination processes constitute state action." (internal citations omitted)).

It is not surprising that Starbuck cites to inapposite case law to support his claims because the relevant case law has repeatedly rejected the exact, or substantially similar, state action theory that Starbuck asserts here. As discussed *supra, Kurita* expressly rejected the plaintiff's state action theory which, like Starbuck's, rested on "the fact that the state has entrusted the power to resolve primary election contests with the State Primary Board." *See Kurita*, 2008 WL 4601574, at *9 ("The Court does not agree with Plaintiff's proposition that the state legislature's decision to permit political parties to resolve their own nominating contests prior to the general election (and the state courts' refusal to intercede in purely intra-party disputes) constitutes state action under the law."). The court explained that "[m]erely because an entity is subject to state regulation does not by itself convert its action into state action." *Id.* (internal quotations omitted) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)).

Seven years later, *Neuman v. Ocean County Democratic County Committee* rejected the same (faulty) theory under the same principles espoused in *Kurita*. There, the plaintiffs (similar to

Starbuck) contended that the defendant political party was a state actor because it was "regulated, registered, and accorded the authority to take action by [state law]." No. CV 16-2701 (FLW), 2017 WL 396443 (D.N.J. Jan. 30, 2017). Citing an established body of SCOTUS precedent, the court held that "these reasons, alone, are insufficient to transform the internal actions of a private political party to that of the State, for the purposes of attaching liability under § 1983." *Id.* (citing *Blum*, 457 U.S. at 1004 ("The mere fact that [an entity] is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment.") and *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974)).

Counts One through Three should be dismissed against the TRP Defendants because they do not allege facts meeting the first element of a claim under § 1983 or the 14th Amendment.

### 2. <u>Counts One Through Three Also Should Be Dismissed Because Starbuck Was Not Deprived of Any Right, Constitutional or Otherwise, Under 42 U.S.C. § 1983.</u>

Starbuck also has failed to meet the second fundamental element of proving a § 1983 claim because he has not shown the deprivation of any right or privilege under the United States' Constitution or the laws of the United States. *Federspiel,* 867 F. Supp. at 621 (confirming that to succeed on a section 1983 claim, the plaintiff must show that defendants have deprived him of some right or privilege secured by the constitution or laws of the United States).

Starbuck's efforts to satisfy this second requirement—that he was deprived of some right or privilege secured by the constitution or laws of the United States—may be summarized as the following: (i) the TRP bylaws' "residency requirement" allegedly violates that Qualifications Clause therefore rendering the TRP's removal pursuant to the bylaws unconstitutional (*see* Compl. ¶¶ 58-62, 66-68); (ii) Starbuck allegedly has a constitutional right to be a congressional candidate and the TRP supposedly violated such (*see* Compl. ¶¶ 73-84); and (iii) that Starbuck allegedly has a constitutional right to access the ballot and the TRP supposedly violated such (*see* Compl. ¶¶ 87-

13

99). Even accepting these allegations as true for the sake of this Motion, Starbuck cannot establish

that he was deprived of any right or privilege under the Constitution or laws of the United States.

### a. The TRP Bylaws' Alleged "Residency Requirement" Does Not Violate the Qualifications Clause

Starbuck asserts that the TRP bylaws' disjunctive requirement—that "[a]ny individual who

has voted in at least three (3) of the four (4) most recent Statewide Republican primary elections"—

is a "de facto residency requirement" (*see* Compl. ¶¶ 59, 66) that "constitutes the kind of

unconstitutional, additional qualification of congressional candidates that . . . is unconstitutional."

*See id.* ¶ 59. However, this conclusory assertion is unsupported by the facts and is based on the

misinterpretation and misapplication of Starbuck's cardinal case *U.S. Term Limits, Inc. v.

Thornton*, 514 U.S. 779 (1995).

Based solely on the allegations within Starbuck's Complaint[5], Starbuck purports to rely on

the principle that any residency requirement imposed by a state is unconstitutional. *See* Compl.

62-66, 69-70. Even assuming that the TRP's removal of Starbuck pursuant to its statutorily

authorized bylaws can be considered an act of the state (as discussed *supra* Section III.A.1, it

cannot), such principle still has no legitimate legal basis here. What Starbuck overlooks is that in

*Term Limits*, the Court reasoned that where requirements are procedural in nature and do not add

substantive qualifications, they do not violate the Qualifications Clause. 514 U.S. at 834-35.

Moreover, states are entitled under the Elections Clause to adopt "generally applicable and

---

[5] The TRP Defendants dispute that Starbuck could only be a bona fide Republican based only on his voting record. The bylaws provide another method of being approved as a bona fide Republican, which includes being "vouched for in writing (to the satisfaction of the decision makers defined herein) as a bona fide Republican. . . ." Ex. A. to Compl., TRP Bylaws, Article IX.1.C (emphasis added). Starbuck submitted "vouching letters" from certain TRP officials as an attempt to satisfy the decision-makers. Compl. ¶ 34. After considering this information, on April 19, 2022, the TRP still voted to uphold Starbuck's earlier removal from the ballot as they were not convinced of his bona fides to their satisfaction. *Id.* ¶¶ 39-40.

14

evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Id.* (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 788, n. 9) (noting the approval of election requirements that further the States' interest in avoiding "the presence of frivolous candidacies" (quoting *Munro v. Socialist Workers Party*, 479 U.S. 189, 194-195 (1986)); *see also Libertarian Party of Ill. v. Rednour*, 108 F.3d 768, 777 (7th Cir. 1997).

In fact, courts faced with three-year (and even longer) residency requirements for public candidacy have routinely upheld their constitutionality. *See Chimento v. Stark*, 414 U.S. 802 (1973) (summarily affirming a three-judge district court opinion upholding the constitutionality of New Hampshire's seven-year durational residency eligibility requirement for the office of Governor); *Hayes v. Gill*, 473 P2d 872, *appeal dismissed* 401 U.S. 968 (upholding a 3-year residence requirement for the state legislature, noting that such requirement helped assure the legislator was familiar with his constituents and their needs in order for the legislator to effectively represent the views of his constituents); *DeHond v. Nyquist*, 318 N.Y.S.2d 650 (N.Y. Sup. Ct. 1971) (upholding the validity of a 3-year residence requirement for the office of member of the city school district board of education).

Even assuming that the TRP's removal of Starbuck pursuant to its statutorily authorized bylaws is a "state action" (it is not), the "de facto [three-year] residency requirement" that Starbuck alleges does not violate the Qualifications Clause and is therefore not unconstitutional. The TRP's requirement is merely procedural in nature, properly adopted pursuant to the Elections Clause, and enacted for the legitimate purpose of avoiding the presence of frivolous candidates on the ballot and assuring the candidate's familiarity with his or her potential constituents. *See Term Limits*, 514 U.S. at 834-35); *id.* (quoting *Anderson*, 460 U.S. at 788 n. 9); *Hayes*, 473 P2d 872. Starbuck cannot base any of his § 1983 claims on any alleged deprivations of any supposed Qualification Clause-related rights.

15

**b. Starbuck Does Not Have Any Right, Constitutional or Otherwise, To Be a Congressional Candidate for the 5th District of Tennessee**

Starbuck alleges that he has the "right to run in the Republican primary in Tennessee's 5th Congressional District" and such alleged right "is a liberty interest protected by the Fourteenth Amendment," which the TRP has supposedly violated. (Compl. ¶¶ 74-75.) Starbuck further alleges that his due process rights stemming from his alleged "right to run" have been violated. (*Id.* ¶¶ 79-82.) Starbuck is wrong once again. Starbuck has no constitutional or fundamental right to serve as a candidate for elective office, or to be the nominee for a political party. "The United States Supreme Court has held . . . that there is no fundamental right to run as a candidate for elective public office." *Civil Serv. Merit Bd. of City of Knoxville v. Burson,* 816 S.W.2d 725, 733 (Tenn. 1991) (citing *Bullock v. Carter,* 405 U.S. 134, 142-143 (1972)). Given that Starbuck's alleged rights do not exist, and that imaginary rights cannot be violated, his claims must be dismissed.

Boiled down, Starbuck's allegations purely focus on alleged political rights. Political rights, however, are not protected by the Constitution or any law and cannot serve as the basis of a section 1983 claim. *See Colegrove v. Green,* 328 U.S. 549, 553-54 (1946) ("It is hostile to a democratic system to involve the judiciary in the politics of the people. And it is not less pernicious if such judicial intervention in an essentially political contest be dressed up in the abstract phrases of the law."). In fact, Tennessee state courts have consistently refused to rule on disputes like this because "such disputes involve purely political rights and such disputes are to be referred to the political parties for resolution." *Kurita,* 2008 WL 4601574, at *12 (citing *Heiskell v. Ledgerwood,* 234 S.W. 1001, 1001-1002 (Tenn. 1921); *Taylor v. Tenn. State Democratic Exec. Comm.,* 574 S.W.2d 716, 717-718 (Tenn. 1978); *Inman v. Brock,* 622 S.W.2d 36, 42-43 (Tenn. 1981)). "[I]ntra-party squabbles over the nominating procedures are to be considered a political matter which are to be resolved by the party itself without judicial intervention." *Taylor,* 574 S.W.2d at 717-18.

Therefore, in addition to his failure to plead facts showing state action, Starbuck's § 1983 claims also must be dismissed because he cannot show that he has a constitutional right to seek the TRP's nomination for public office.

### c. Starbuck's Removal Does Not "Unconstitutionally Deprive[] [Starbuck] of Access to the Ballot"[6]

Starbuck also attempts to repackage his "right to run" claims as claims that his removal unconstitutionally deprived him of access to the ballot. *See* Compl. ¶¶ 87-99. But, no matter how Starbuck reframes any constitutional rights he alleges, he nonetheless cannot demonstrate any legitimate rights that have been violated by the TRP's proper removal of Starbuck pursuant to its bylaws and TCA § 2-13-104.

While Starbuck may have some "First Amendment right to ballot access," (*see* Compl. ¶¶ 9, 90), any such right is not implicated by the TRP's removal of Starbuck from the ballot. *Clements v. Fashing*, which Starbuck himself relies on (Compl. ¶ 95), explicitly states that the Court is "[f]ar from recognizing candidacy as a 'fundamental right'" and that "the existence of barriers to a candidate's access to the ballot 'does not of itself compel close scrutiny.'" 457 U.S. 957, 963 (1982) (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)). In fact, *Anderson v. Celebrezze*, 460 U.S. 780 (1983)— which Starbuck also relies on (Compl. ¶ 90)—emphasizes that "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." 460 U.S. at 788. As is especially pertinent here, the *Anderson* court explains that the Court has "upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself" because "[t]he State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on

---

[6] Compl. ¶ 90.

WBD (US) 56377409v1

the ballot, because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates." *Id.* n.9.

Here, again even assuming that the TRP's removal of Starbuck pursuant to its statutorily authorized bylaws is a "state action" (it is not), the TRP's removal of Starbuck pursuant to its bylaws' "bona fide" requirement does not implicate (and therefore does not violate) any of Starbuck's alleged "ballot access" rights. The TRP's bona fide requirement does not invoke close scrutiny and is otherwise a "generally applicable and evenhanded restriction that protects the integrity and reliability of the electoral process itself" by preventing the encumbrance of the ballot "with the names of frivolous candidates." *Anderson*, 460 U.S. at 788 n.9; *Clements v. Fashing*, 457 U.S. at 963. Therefore, Starbuck cannot show that he was unconstitutionally deprived of access to the ballot. *See* Compl. ¶¶ 90-91. Starbuck's "access to the ballot" claims also fail. Starbuck has failed to state a claim under 42 U.S.C. § 1983 and such claims should be dismissed.

## B. **The Remaining State Law Claims Asserted in Starbuck's Complaint Should Be Dismissed Under Fed. R. 12(h)(3) For Lack of Subject Matter Jurisdiction.**

As set forth above, this Court should dismiss Counts One through Three of Starbuck's Complaint (Compl. ¶¶ 55-100) given his failure to state cognizable § 1983 claims. Where this Court dismisses all of Starbuck's federal claims, this Court should then dismiss Starbuck's remaining state law claims (Compl. ¶¶ 101-35) given its discretion under 28 U.S.C. § 1367.

When a plaintiff's federal claims have been dismissed on the merits, the question of whether to retain jurisdiction over state law claims rests within the Court's discretion. *Blakely v. United States,* 276 F.3d 853, 860 (6th Cir. 2002); *see also Weeks v. Portage Cnty. Exec. Offs.*, 235 F.3d 275 (6th Cir. 2000) (observing that section 1367(c) "permit[s] the district court to decline to exercise supplemental jurisdiction when that court has dismissed all of the claims over which it has original jurisdiction"). But, "[n]eedless decisions of state law should be avoided both as a

18

matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers of Am. v. Gibb*s, 383 U.S. 715, 726 (1966). Moreover, the dismissal of claims over which the federal court had original jurisdiction creates a presumption in favor of dismissing without prejudice any state-law claims that accompanied it to federal court. *Blakely*, 276 F.3d at 863; *see Thomas v. Taco Bell Corp. Off.*, 1:19 CV 1447, 2019 WL 7290962, at *2 (N.D. Ohio Dec. 30, 2019) (noting that "in the absence of a cognizable federal question or a claim over which this Court may exercise diversity jurisdiction, the Court lacks subject matter jurisdiction and the Complaint is dismissed pursuant to Rule 12(h)(3)"); *Schirrick v. AU Sable Valley Cmty. Mental Health Auth.*, 04-10367-BC, 2006 WL 373038, at *7-8 (E.D. Mich. Feb. 16, 2006) ("[I]t is appropriate to decline the exercise of supplemental jurisdiction over the state law claims now that the plaintiff's federal claim will be dismissed. Those claims, therefore, will be dismissed without prejudice.").

Starbuck alleges that this Court has subject-matter jurisdiction over his first three causes of action based on federal question jurisdiction and alleges that this Court may only adjudicate his state law claims by way of supplemental jurisdiction. Compl. ¶ 15 (citing 28 U.S.C. § 1367). Starbuck does not allege diversity jurisdiction. *Id.* ¶¶ 10-14 (all parties are Tennessee residents). Therefore, the Court's dismissal of Starbuck's first three causes of action for failure to state a claim would only leave state claims that lack independent subject-matter jurisdiction. In such a situation, the Court should dismiss Starbuck's remaining state law claims. *See Blakely*, 276 F.3d at 863; *Gibb*s, 383 U.S. at 726. However, even if the Court exercises supplemental jurisdiction, these claims also should be dismissed for failure to state a claim. *See infra* Sections III.C-E.

C. **The TRP's SEC Was Not Acting as the TRP's "State Primary Board" When Removing Starbuck from the Republican Ballot and, Therefore, is Not Subject to Tennessee's Open Meetings Act.**

Starbuck also alleges (Compl. ¶¶ 101-117) that the TRP violated the Tennessee Open

Meetings Act ("TOMA") by properly exercising its rights to remove him from the ballot under the authority granted to it by TCA §§ 2-13-104, 2-5-204. Starbuck is wrong. An SEC's private determination of whether a candidate is a bona fide member of the political party does not require public meetings or the involvement of a state primary board. TCA §§ 2-13-104, 2-5-204; *see also State ex rel. Inman v. Brock*, 622 S.W.2d 36, 42 (Tenn. 1981).

As discussed above, once a potential candidate correctly follows the nominating petition process, "[e]ach qualified candidate's name shall be placed on the ballot . . . unless the <u>executive committee</u> with which a primary candidate filed the original petition determines that the candidate is not qualified under § 2-13-104." TCA § 2-5-204 (emphasis added). TCA § 2-5-204 repeatedly states that, *inter alia*, it is the "<u>executive committee</u>" that determines whether a candidate is a bona fide member of the relevant political party and the "<u>executive committee</u>" can remove the candidate; it is <u>not</u> the state primary board.

Despite the repeated references to the "executive committee" in the relevant statute, Starbuck wrongly asserts that the SEC's removal is subject to the TOMA because the SEC was acting as the state primary board. Compl. ¶¶ 102-04. The SEC, however, was not acting as the state primary board when it removed Starbuck from the ballot and was, instead, acting only as the SEC in determining who are actual bona fide party members. TCA §§ 2-13-104, 2-5-204(b). The plain language of the Tennessee Code makes this clear by highlighting that (i) the SEC and the "state primary board" are two distinct bodies with distinct duties; and (ii) it is the SEC, <u>not</u> the state primary board, who may remove a candidate from the ballot because they are not a bona fide member of the party. *Id.* §§ 2-13-104, 2-5-204(b), and 2-13-106.

Not only does the plain language of the Tennessee Code underscore that the SEC and the state primary board are two distinct <u>bodies</u>, but it also emphasizes their distinct <u>duties</u>. The duties of a state primary board may fairly be described as post-primary election duties aimed towards

ensuring fair, timely, and honest elections. *See* Tenn. Op. Atty. Gen. No. 19-11, 2019 WL 3759102, at \*3 (July 30, 2019). Namely, a political party's state primary board is charged with "hear[ing] and determin[ing]" a primary election contest and "mak[ing] the disposition of the contest which justice and fairness require, including setting aside the election if necessary." TCA § 2-17-104(c); *see also* Tenn. Op. Atty. Gen. No. 19-11, 2019 WL 3759102, at \*1 (quoting § 2-17-104(c)). In fact, in *Kurita*, the court recognized the state primary board's post-primary election contest duties (as opposed to pre-election personal intraparty duties), stating that "the legislature, through adoption of § 2-17-104, undoubtedly delegated the power and authority to decide the method, procedure and outcome of primary election contests to the State Primary Board." 2008 WL 4601574, at \*10.

Here, the SEC was not acting as the state primary board. The SEC was not hearing an election contest (*see § 2-17-104*). Rather, the SEC was acting in its purely private capacity of determining, pre-election, whether a candidate was truly a bona fide member of the party pursuant to §§ 2-5-204(b)(2)(A) and 2-13-104.[7]

Significantly, the TOMA does <u>not</u> extend to the SEC when it is acting under its authority (§§ 2-5-204(b)(2)(A), 2-13-104) to determine who is a bona fide member of the political party. In fact, while Starbuck cites some cases in his Complaint, he fails to inform the Court of long-standing Tennessee case law precedent that exempts the SEC's selection of intraparty nominees for the party ballot from the TOMA. In *State ex rel. Inman v. Brock*, the Tennessee Supreme Court "expressly reject[ed]" the plaintiffs' contention that the "state executive committee's actions are regulated by the code and that the state executive committee, in selecting by secret ballot the

---

[7] Starbuck's citation to *Banchy v. Republican Party of Hamilton Cnty.*, 898 F.2d 1192, 1194-96 (6th Cir. 1990) on this point is confusing since the court in that case solely ruled on § 1983 claims (which they found groundless) and never discussed Tennessee law or the TOMA.

21

nominees now challenged, violated [TOMA]." 622 S.W.2d 36, 42 (Tenn. 1981). The court further explained, "the election code read in its entirety indicates that T.C.A. s 2-13-203 is to be read permissively. T.C.A. s 2-1-102 plainly states that the election code is to 'regulate the conduct of all elections by the people.' T.C.A. s 2-1-104(6) defines elections as including general elections, primary elections and submission of questions to the people by a ballot <u>not the method of selecting</u> <u>nominees by the state executive committee</u>." *Id.* (emphasis added). In light of *Brock*, which Starbuck ignores to his convenience, it is clear that the SEC's removal of Starbuck was not subject to the requirements of TOMA.

The SEC is not a governing body or a public body under the TOMA. *Dorrier v. Dark,* 537 S.W.2d 888, 891 (Tenn. 1976). Therefore, Count Four of the Complaint also fails to state a claim against the TRP Defendants.

**D. <u>The TRP's ByLaws Are Not a Contract with Starbuck, and even if they were, the Contract Was Not Breached.</u>**

Starbuck's contract claims are premised on his allegations that "the TRP's Bylaws establish that an individual who is an active member of the party and a bona fide republican can participate in primary elections" and Starbuck "accepted the TRP's offer and was an active member of the TRP and is a bona fide Republican," having "provided valuable consideration in his contributions to the party, both monetary and non-monetary." Compl. ¶¶ 119-20. And to the extent a contract exists and the contract's binding terms are the provisions of the TRP's bylaws, Starbuck then alleges that the TRP defendants breached[8] such contract by "instructing the State of Tennessee to terminate [Starbuck's] federal candidacy by removing him from the ballot, even though [Starbuck]

---

[8] Defendant Golden also cannot breach any contract purportedly based on the bylaws because he is not a party to the bylaws, is not mentioned in the bylaws, and does not have authority to adopt or amend the bylaws. Ex. A to Compl., Article IX, § 3. He cannot be found liable on a contract to which he is not a party. *Schilling Foods, LLC v. First Data Corp.,* No. 218CV02320MSNCGC, 2021 WL 5154243, at *4 (W.D. Tenn. Aug. 10, 2021) (dismissing breach of contract claims).

22

performed the terms of the contract by meeting all eligibility requirements to run as a bona fide Republican in the primary election." *Id.* ¶ 121. However, just because "an organization's bylaws can constitute an enforceable contract,"[9] does not mean they do. The TRP's bylaws are not an enforceable contract.

"In order to enforce a contract in Tennessee, the contract must result from a meeting of the minds, must be based upon sufficient consideration, and must be sufficiently definite to be enforced." *Peoples Bank of Elk Valley v. ConAgra Poultry Co.*, 832 S.W.2d 550, 553. "[M]eeting of the minds cannot be accomplished by the unilateral action of one party. *Id.* (quotation omitted). All of Starbuck's contract allegations pertain to his own actions. *See* Compl. ¶ 120 (claiming one-sided consideration). Not once does Starbuck allege that the TRP demonstrated any intent to be bound by its bylaws. Thus, Starbuck's unilateral allegations fail to satisfy that there is "a meeting of the minds." *See Peoples Bank*, 832 S.W.2d at 553. A contract does not exist. And even if the bylaws constitute a contract (they do not), the bylaws allow the TRP to "require additional verification that said individual is indeed a bona fide Republican" and ultimately authorizes the TRP to make "[t]he final decision concerning said individual's bona fide Republican status." Ex. A to Compl., Article IX.1.C. Thus, Starbuck cannot premise his allegations of breach on TRP's proper removal of Starbuck pursuant to its bylaws and TCA § 2-13-104. *See* TRP Bylaws, Article

---

[9] *Lewisburg Cmty. Hosp. Inc. v. Alfredson*, 805 S.W.2d 756, 756-57 (Tenn. 1991). Starbuck's reliance on *Lewisburg* (Compl. ¶ 119) is misplaced. *Lewisburg* is factually inapposite to the situation here. In *Lewisburg*, the court presided over a hotel staff member's breach of contract claims under hospital bylaws. As a matter of Tennessee law, hospital bylaws constitute an enforceable contract between a hospital and its personnel since a hospital's bylaws are an "integral part" of the relationship between the hospital and the members of its medical staff. *Id.* at 759 (citing a string of cases supporting this hospital-specific principle); *Gekas v. Seton Corp.*, M200600454COAR3CV, 2008 WL 836399, at *6-7 (Tenn. App. Mar. 28, 2008). In contrast, Tennessee does not recognize (and Starbuck does not allege) that a political party's bylaws are an integral part of the relationship between a state political party and a possible candidate (because they are not here). *Lewisburg* does not allow Starbuck to assert that the bylaws are a contract.

IX.1.C. Starbuck's contract claims must be dismissed for the failure to state a claim.

**E. Starbuck's Promissory Estoppel Allegations in Count Five Also Fail to State a Claim.**

Finally, in asserting a promissory estoppel state law cause of action, Starbuck alleges that: (i) the TRP Defendants supposedly "promised to permit candidates who met certain eligibility requirements to run in the primary election for the Republican nomination to represent the 5th District of Tennessee in the United States Congress"; (ii) such purported promise was "unambiguous and not unenforceably vague"; (iii) it was reasonably foreseeable that Starbuck would act upon the supposed promise to run in the party's primary and would suffer economic detriment through the loss of his time and expenditure of resources to do so; and (iv) Starbuck reasonably relied upon the TRP's purported promise to his detriment, including by completing all the requirements to appear on the ballot in the August 2022 federal primary election for the office of United States Representative, suffering economic detriment in the form of lost time and opportunities and personal expenditures. *See* Compl. ¶¶ 128-35. Starbuck's factual allegations underlying his promissory estoppel claim amount to nothing more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal,* 556 U.S. at 678. This claim should be dismissed.

As the *Iqbal* Court explains, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 570). Starbuck fails to make well-pleaded factual allegations to support promissory estoppel. (Compl. ¶¶ 129-35.) Starbuck's allegations merely regurgitate the requisite promissory estoppel elements absent any factual enhancement. *Kinard v. Nationstar Mortg. LLC*, 572 S.W.3d 197, 210 (Tenn. Ct. App. 2018) (discussing elements of promissory estoppel in Tennessee).

For example, in purporting to establish the "promise" element, Starbuck only alleges that the TRP Defendants "promised to permit candidates who met certain eligibility requirements to

24

run in the primary election for the Republican nomination." *See* Compl. ¶ 129. On the face of the Complaint, there is no factual enhancement that renders this alleged promise plausible (e.g., there is no indication of how, where, <u>or</u> even when the TRP made this alleged promise[10]). Starbuck's allegation is merely a threadbare recital of the "promise" element and is too vague to qualify as a plausible promise under the *Iqbal/Twombly* pleading requirements. *Iqbal,* 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570; *see Battah v. ResMAE Mortg. Corp.*, 746 F. Supp. 2d 869, 875-76 (E.D. Mich. 2010). Starbuck's remaining factual allegations (Compl. ¶¶ 130-135) are also conclusory, threadbare recitations of the two remaining requisite elements and also devoid of factual enhancement. All of Starbuck's allegations are just legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

In light of the foregoing, Starbuck fails to meet the basic pleading requirements in alleging each of the elements necessary to establish a plausible promissory estoppel claim, and this Court should also dismiss Starbuck's promissory estoppel claim.

## IV.    <u>CONCLUSION</u>

For all of the foregoing reasons, Starbuck's Complaint against the TRP Defendants should be dismissed in its entirety *with prejudice.* Alternatively, the Court should dismiss Starbuck's § 1983 claims (Counts 1-3) that are based on federal law <u>with prejudice</u>, and then dismiss the state law claims (Counts 4-6) because of a lack of jurisdiction under Fed. R. Civ. P. 12(h)(3). After dismissing the claims against the TRP Defendants, the Court should then order Starbuck to pay the TRP's attorneys fees and costs. *See* 42 U.S.C. § 1988(b).[11]

---

[10] *See De La Fuente v. DNC Services Corp.*, CV 18-336 (RC), 2019 WL 1778948, at *4 (D.D.C. Apr. 23, 2019) (dismissing plaintiff's promissory estoppel claims because the promise, as alleged, was too vague and indefinite to have reasonably induced plaintiff's reliance).

[11] TRP Defendants also oppose the Emergency Motion for Temporary Restraining Order/Preliminary Injunction ("Motion for TRO") that was separately filed today (ECF No. 7).

Respectfully Submitted,

/s/ Joshua A. Mullen
Joshua A. Mullen, Esq. (TN Bar No. 28388)
WOMBLE BOND DICKINSON (US) LLP
1222 Demonbreun Street
Nashville, TN 37203
Josh.Mullen@wbd-us.com

&

2001 K Street, NW
Suite 400 South
Washington D.C. 20006
Direct Dial: (202) 857-4522
Facsimile: (202) 261-0034[12]
*Counsel for Defendants, Tennessee Republican Party and Scott Golden*

---

TRP Defendants are working on a response to the Motion for TRO. However, as shown herein, Starbuck has no likelihood of success on the merits as this entire case should be dismissed. His separate Motion for TRO also should be denied.

[12] Washington, DC is the official mailing address as provided in Local Rule 83.01(f), while the Nashville, TN address is my local office.

26

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2022, I caused a copy of the foregoing Memorandum of Law in Support of the Motion to Dismiss All Claims Against the Tennessee Republican Party and Scott Golden to be filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt, including those listed below.

Eric G. Osborne (#29719)
Mark Alexander Carver (#36754)
SHERRARD ROE VOIGT & HARBISON, PLC
150 Third Avenue South, Suite 1100
Nashville, Tennessee 37201
Tel. (615) 742-4200 | Fax. (615) 742-4539
eosborne@srvhlaw.com
acarver@srvhlaw.com

&

David A. Warrington
(special admission pending)
Michael A. Columbo
(special admission pending)
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Tel. (415) 433-1700
dwarrington@dhillonlaw.com
mcolumbo@dhillonlaw.com
*Counsel for Robert Starbuck Starbuck*

  /s/  Joshua A. Mullen
Joshua Mullen

WBD (US) 56377409v1